*Sandra*

**RECEIVED**

JUN 2 3 2000

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION**

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

JUN 2 3 2000

ROBERT H. SHEMWELL, CLERK
BY
DEPUTY

|  |  |
|---|---|
| BASKIN-ROBBINS INCORPORATED, a Delaware Corporation, and BASKIN-ROBBINS USA, CO. a California Corporation, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| versus | ) ) |
| TOMMY'S R.V. RENTALS, INC., a Louisiana Corporation, TOMMY JOYCE, and MARLENE JOYCE, | ) ) ) ) ) |
| Defendants. | ) ) ) |

CIVIL ACTION

**CV00- 1522 LC**

JUDGE _**JUDGE TRIMBLE**_

MAG. JUDGE _**MAGISTRATE JUDGE WILSON**_

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Baskin-Robbins Incorporated and Baskin-Robbins USA, Co., bring this civil

action for damages and injunctive relief, and allege the following:

### PARTIES

1.

Plaintiff Baskin-Robbins Incorporated is a Delaware corporation with its principal place

of business at 14 Pacella Park Drive, Randolph, Massachusetts.  Plaintiff Baskin-Robbins

U.S.A., Co. is a California corporation with its principal place of business at 14 Pacella Park

Drive, Randolph, Massachusetts (unless otherwise specified, Baskin-Robbins Incorporated and

Baskin-Robbins U.S.A., Co. are collectively referred to hereinafter as "Baskin-Robbins").

Baskin-Robbins franchisees are licensed to use the Baskin-Robbins trade names, service marks,

and trademarks and to operate under the Baskin-Robbins system, which involves the production,



N0526232.1          **SCANNED**          1

merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.

Defendant Tommy's R.V. Rentals, Inc. is a Louisiana corporation with its principal place of business at 149 West Prien Lake Road, Lake Charles, Louisiana. At all times relevant to this action, Defendant Tommy's R.V. Rentals, Inc. was the owner and operator of a retail ice cream store located at 149 West Prien Lake Road, Lake Charles, Louisiana. Defendant was a Baskin-Robbins franchisee for the store pursuant to a Franchise Agreement dated January 25, 1994. Defendant was licensed to use the Baskin-Robbins trademarks, trade name and trade dress in accordance with the terms of the Franchise Agreement.

3.

Defendant Tommy Joyce is a natural person and a resident and citizen of the State of Louisiana. At all times relevant to this action, Tommy Joyce was the owner and operator of a retail ice cream store located at 149 West Prien Road, Lake Charles, Louisiana. Tommy Joyce was a Baskin-Robbins franchisee for the store pursuant to a Franchise Agreement dated January 25, 1994. Tommy Joyce was licensed to use the Baskin-Robbins trademarks, trade name and trade dress in accordance with the terms of the Franchise Agreement. Tommy Joyce is an officer and/or shareholder of Defendant Tommy's R.V. Rentals, Inc. and has personally guaranteed the obligations of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of Corporate Sublease and Corporate Franchisee.

4.

Defendant Marlene Joyce is a natural person and a resident and citizen of the State of Louisiana.  At all times relevant to this action, Marlene Joyce was the owner and operator of a retail ice cream store located at 149 West Prien Lake Road, Lake Charles, Louisiana.  Marlene Joyce was a Baskin-Robbins franchisee for the store pursuant to a Franchise Agreement dated January 25, 1994.  Marlene Joyce was licensed to use the Baskin-Robbins trademarks, trade name and trade dress in accordance with the terms of the Franchise Agreement.  Marlene Joyce is an officer and/or shareholder of Defendant Tommy's R.V. Rentals, Inc. and has personally guaranteed the obligations of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of Corporate Sublease and Corporate Franchisee.

## JURISDICTION

5.

This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332, 1338, & 1367(a).  The amount in controversy exceeds $75,000, exclusive of costs and interest.

## VENUE

6.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

7.

Baskin-Robbins Incorporated is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks.  Baskin-Robbins Incorporated has the exclusive license to use and license others to use these marks and trade name and has used them continuously since

approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

8.

Baskin-Robbins USA, Co. has been licensed by Baskin-Robbins Incorporated to grant franchises for the operation of Baskin-Robbins stores within the area in which Defendants' Baskin-Robbins franchise is located. Baskin-Robbins USA, Co. is authorized to use Baskin-Robbins Incorporated's trademarks, service marks and trade name and to sub-license Baskin-Robbins franchisees to use these marks and trade name.

9.

Baskin-Robbins Incorporated owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

10.

The Baskin-Robbins trademarks are utilized in interstate commerce.

11.

The Baskin-Robbins marks have been widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

12.

Baskin-Robbins and its franchisees currently operate more than 2,500 stores in the United States and more than 2,200 stores outside of the United States. In the fifty years since the Baskin-Robbins system was created, millions of consumers have been served in Baskin-Robbins stores.

13.

As a result of the extensive sales, advertising, and promotion of items identified by the

Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks,

and to associate them exclusively with products and services offered by Baskin-Robbins and its

franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks

in the United States today, and are assets of inestimable value to Baskin-Robbins, representing

and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

14.

Maintenance of the highest standards of appearance, product quality, cleanliness,

sanitation and customer service are essential to the development and maintenance of the

reputation and goodwill of Baskin-Robbins. Uniformity of appearance, products offered, service,

and overall experience by consumers throughout the Baskin-Robbins System is also vital to


develop and protect Baskin-Robbins' goodwill and reputation. These standards are important to

Baskin-Robbins and to each franchisee.

### The Parties' Rights and Obligations
### Under the Franchise Agreement

15.

The Franchise Agreement executed by Defendants contains acknowledgments and

agreements by the Defendants concerning the importance of maintaining Baskin-Robbins'

standards for uniformity, customer service, and product quality. The applicable paragraphs

include:

    a.       Section 5.2: "In order to promote and protect the value of the Proprietary
                Names and Marks and the System, including the goodwill and reputation
                of BASKIN-ROBBINS stores and the business thereof, and the business

5

interests of the parties hereto, and to insure optimum quality control as to the Products and services provided and sold in BASKIN-ROBBINS stores, FRANCHISEE acknowledges and agrees that substantial uniformity must be maintained in the quality, type and standard of BASKIN-ROBBINS stores similar to that franchised hereunder, and in the facilities, Products, services and operations thereof. Therefore, FRANCHISEE agrees to operate the Store in accordance with the provisions of this Agreement and such other of BASKIN-ROBBINS' reasonable requirements with respect to the operation of BASKIN-ROBBINS stores as may be prescribed to FRANCHISEE from time to time (hereinafter collectively referred to as the "Standards");"

b.  Section 5.6: "FRANCHISEE further acknowledges and agrees that BASKIN-ROBBINS shall have sole control and discretion over the development of the System and the designation of the Products and services to be offered in the Store, and that FRANCHISEE will comply with BASKIN-ROBBINS' requirements in that regard;"

c.  Section 6.1: "FRANCHISEE shall maintain in sufficient supply, and use and/or sell at all times, only such Products and Supplies as meet BASKIN-ROBBINS' standards and specifications (from which FRANCHISEE shall not deviate without BASKIN-ROBBINS' prior written consent) and as are expressly approved for use and/or sale in writing by BASKIN-ROBBINS; FRANCHISEE shall sell or offer for sale all types of Products and services specified by BASKIN-ROBBINS; and shall discontinue selling and offering for sale any Products or services which BASKIN-ROBBINS may, in its sole discretion, disapprove in writing at any time;"

d.  Section 6.3: "FRANCHISEE shall sell, distribute and deliver Products only in such weights, sizes, forms and packages as are approved in writing by BASKIN-ROBBINS from time to time;" and

e.  Section 7.1: "AREA FRANCHISOR agrees to supply to FRANCHISEE, and FRANCHISEE agrees to purchase from AREA FRANCHISOR, all of the Store's requirements for the Products described in Section 1.1.1 as shall be specified by BASKIN-ROBBINS from time to time in the Standards, at AREA FRANCHISOR's wholesale prices at the time of delivery. Such Products will be of the variety of kinds and flavors which from time to time are selected by BASKIN-ROBBINS for supply to BASKIN-ROBBINS FRANCHISEES . . . .";

16.

The Franchise Agreement executed by Defendants also contains acknowledgments and

agreements by the Defendants concerning the importance of enhancing the

goodwill Baskin-Robbins has created. For example, the applicable paragraphs of the Franchise

Agreement include:

a.      Section 5.1: "FRANCHISEE agrees to use its best efforts to enhance the goodwill which BASKIN-ROBBINS has created for the Proprietary Names and Marks and for the System, including, without limitation, operating the Store and promoting the retail sale of Products and services in such manner as will further enhance the goodwill of, and customer demand for, Products and services."

b.      Section 10.2.1: "FRANCHISEE shall use only the Proprietary Names and Marks designated by BASKIN-ROBBINS, and shall use them only in the manner expressly authorized and permitted by BASKIN-ROBBINS."

c.      Section 10.2.2: "FRANCHISEE may use the Baskin-Robbins service marks for the operation of the Store only at the Premises or in advertising for the authorized business conducted at or from the Premises.

        FRANCHISEE may use the Baskin-Robbins trademarks only in advertising of the Products described in section 1.1.1."

d.      Section 10.2.5: "Any unauthorized use of the Proprietary Names and Marks shall constitute an infringement of BASKIN-ROBBINS' rights and an event of default under Section 16.4."

e.      Section 10.3.7: "FRANCHISEE shall not engage in any trade practice or other activity which is harmful to the goodwill of, or reflects unfavorably on the reputation of BASKIN-ROBBINS, BASKIN-ROBBINS stores, the System, the Products, the Proprietary Names and Marks, AREA FRANCHISOR or FRANCHISEE, or which constitutes deceptive or unfair competition, or which is in violation of any applicable laws."

f.      Section 15.2: "FRANCHISEE acknowledges that, pursuant to this Agreement, FRANCHISEE will receive valuable specialized training and trade secrets, including, without limitation, confidential information regarding the operational, sales, promotional and marketing methods and techniques of BASKIN-ROBBINS and the System. FRANCHISEE covenants that, except as otherwise approved in writing by BASKIN-ROBBINS, FRANCHISEE shall not, during the term of this Agreement, either directly or indirectly . . . :"

        15.2.1. "divert or attempt to divert any business or customer of the Store to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act

injurious or prejudicial to the goodwill associated with the
Proprietary Names and Marks or the System";

g.      Section 15.8. "FRANCHISEE acknowledges that FRANCHISEE's
        violation of any of the terms of this Section 15 would result in irreparable
        injury to BASKIN-ROBBINS for which no adequate remedy at law may
        be available, and FRANCHISEE accordingly consents to the issuance of
        an injunction prohibiting any conduct by FRANCHISEE in violation of
        the terms of this Section 15, without the requirement for the posting of
        bond, the same being hereby waived by FRANCHISEE."

17.

The Franchise Agreement executed by Defendants contains acknowledgments and

agreements by the Defendants concerning the effect of breaching the Agreement. For example,

the applicable paragraphs include:

> Section 16.3: "FRANCHISEE shall be deemed to be in default under this
> Agreement upon the occurrence of any of the following events, and BASKIN-
> ROBBINS (or AREA FRANCHISOR with the concurrence of BASKIN-
> ROBBINS) may, at its option, terminate this Agreement and all rights granted
> FRANCHISEE hereunder, without affording FRANCHISEE any opportunity to
> cure the default, effective immediately upon written notice from AREA
> FRANCHISOR;"

> Section 16.3.4: "If FRANCHISEE permits the use of the Store or Premises for any
> illegal or unauthorized purpose, including, without limitation, palming off or
> substitution of Products under the Proprietary Names and Marks or other marks of
> BASKIN-ROBBINS;" or

> Section 16.3.6: "If FRANCHISEE offers for sale or sells unauthorized Products or
> services from the Store;" or

> Section 16.3.8: "If FRANCHISEE fails to comply with the in-term covenants set
> forth in Section 15."

18.

The Franchise Agreement contains acknowledgments and agreements by the Defendants

concerning a franchisee's operation of a Baskin-Robbins store after the expiration of the term of

the Franchise Agreement. The applicable provisions include the following:

Section 2.4: "In the event FRANCHISEE remains in possession of, or operates, the Store after expiration of the term of this Agreement, without written consent of both AREA FRANCHISOR and BASKIN-ROBBINS, such operation and any use by FRANCHISEE of the Proprietary Names and Marks and/or the System shall be under a franchise from month to month on the terms and conditions offered to new Franchisees at the time of the term of the Agreement expired, until such franchise is terminated by thirty (30) days' written notice to FRANCHISEE

from AREA FRANCHISOR or BASKIN-ROBBINS, or earlier in accordance with Section 16."

19.

The Franchise Agreement also contains acknowledgments and agreements by Defendants concerning their obligations upon termination or expiration of the Franchise Agreement. Under Paragraph 17, Defendants agreed, among other things, to cease operating as a Baskin-Robbins franchisee and to discontinue their use of Baskin-Robbins' trademarks, trade names and proprietary marks after termination or expiration of the Franchise Agreement.

20.

The Franchise Agreement further provides that in the event of termination for any default, Defendants shall pay to Baskin-Robbins all damages, costs, and expenses, including attorneys' fees, incurred by Baskin-Robbins (¶ 17.1.1). Defendants also agreed to pay all costs and expenses, including reasonable attorneys' fees, incurred in enforcing the covenants contained in paragraph 15 of the Franchise Agreement. (¶¶ 15.7, 25.6). Defendants also agreed that if Baskin-Robbins was the prevailing party in any legal action between the parties, they would pay all of Baskin-Robbins' legal expenses. (¶ 25.6).

## COUNT 1: BREACH OF CONTRACT

21.

The allegations of paragraphs 1 through 20 are hereby incorporated by reference.

22.

Defendants have offered for sale or sold ice cream and/or other products at the Lake

Charles Store that are not approved for use by Baskin-Robbins in its franchised stores.  Such

conduct constitutes a material breach of the terms of the Franchise Agreement.

23.

Pursuant to the applicable provisions of the Franchise Agreement, on or about June 16,

2000, Baskin-Robbins sent the Defendants a notice of termination terminating the Franchise

Agreement, and demanding that the Defendants immediately comply with their post-termination

obligations under the Franchise Agreement, including but not limited to that Defendants cease using

Baskin-Robbins' proprietary marks.

24.

Defendants have failed to comply with their post-termination obligations under the

Franchise Agreement.

25.

As a direct and proximate result of Defendants' conduct, Baskin-Robbins has suffered

and is continuing to suffer irreparable injury, and has incurred and is continuing to incur

monetary damage in an amount that has yet to be determined.

## COUNT 2:  TRADEMARK INFRINGEMENT

26.

The allegations of paragraphs 1 through 25 are hereby incorporated by reference.

27.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name

while selling or offering to sell unapproved products, outside the scope of the Franchise

Agreement and without the consent of Baskin-Robbins, is likely to confuse or deceive the public into believing, contrary to fact, that the Defendants' unauthorized activities are licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins.  Such continued use of the Baskin-Robbins trademarks and trade name infringes Baskin-Robbins' exclusive rights in the Baskin-Robbins trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, the federal common law, and the law of the State of Louisiana.

28.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name after the termination of their Franchise Agreement is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins.  Such continued use of the Baskin-Robbins trademarks and trade name infringes Baskin-Robbins' exclusive rights in the Baskin-Robbins trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, the federal common law, and the law of the State of Louisiana.

29.

Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

30.

As a result of the Defendants' infringement of the Baskin-Robbins trademarks and trade name, Baskin-Robbins has incurred and is likely to incur substantial losses, fees, and expenses, including irreparable injury to the goodwill associated with the Baskin-Robbins trade name and trademarks.

## COUNT 3: UNFAIR COMPETITION

31.

The allegations of paragraphs 1 through 30 are hereby incorporated by reference.

32.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name while selling or offering to sell unapproved products, outside the scope of the Franchise Agreement and without the consent of Baskin-Robbins, is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of goods, services or commercial activities. Such unauthorized use of the Baskin-Robbins trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), the federal common law, and the law of the State of Louisiana.

33.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name after the termination of their Franchise Agreement is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of goods, services or commercial activities. Such unauthorized use of the Baskin-Robbins trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), the federal common law, and the law of the State of Louisiana.

34.

Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

35.

As a result of the Defendants' unfair competition, Baskin-Robbins has incurred and is likely to incur substantial losses, fees, and expenses, including irreparable injury to the goodwill associated with the Baskin-Robbins trade name and trademarks.

### PRAYER FOR RELIEF

WHEREFORE, Baskin-Robbins prays that this Court:

a.      Enter a judgment in favor of Baskin-Robbins for the damages incurred by Baskin-Robbins as a result of Defendants' breaches of the Franchise Agreement;

b.      Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreement *nunc pro tunc*;

c.      Enjoin the Defendants and all those acting in concert with them from infringing upon the Baskin-Robbins trademarks and trade name and from otherwise engaging in unfair competition with Baskin-Robbins;

d.      Enjoin Defendants to file with the Court and serve on Baskin within thirty (30) days after the service upon Defendants of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

e.      Enter an injunctive order directing Defendants to comply with the post-termination obligations under the Franchise Agreement;

f.      Award Baskin-Robbins judgment against Defendants for the damages Baskin-Robbins has sustained and the profits the Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

g.  Award Baskin-Robbins prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

h.  Award Baskin-Robbins such exemplary or punitive damages as are deemed appropriate because of the wilful, intentional, and malicious nature of Defendants' conduct;

i   Award Baskin-Robbins its costs and attorneys' fees incurred in connection with this action, pursuant to contract, § 35 of the Lanham Act, 15 U.S.C. § 1117; and

j.  Award Baskin-Robbins such other relief as this Court may deem just and proper.

Respectfully submitted,

Edward D. Wegmann, T.A. (No. 13315)
Genevieve H. Salassi (No. 25232)
JONES, WALKER, WAECHTER, POITEVENT,
  CARRERE & DENEGRE, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone:   (504) 582-8000
Facsimile:   (504) 582-8011


ATTORNEYS FOR THE PLAINTIFFS
BASKIN-ROBBINS INCORPORATED
AND BASKIN-ROBINS, USA, CO.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

AUG 1 0 2000

ROBERT H. SHEMWELL, CLERK

BY_____  DEPUTY

)
)   CIVIL ACTION
BASKIN-ROBBINS INCORPORATED,   )
a Delaware Corporation, and   )   NO. 00-CV-1522
BASKIN-ROBBINS USA, CO.   )
a California Corporation,   )
)
)   JUDGE JAMES T. TRIMBLE, JR.
Plaintiffs,   )
)
versus   )   MAGISTRATE JUDGE ALONZO P.
)    WILSON
)
TOMMY'S R.V. RENTALS, INC.,   )
a Louisiana Corporation,   )
TOMMY JOYCE, and   )
MARLENE JOYCE,   )
)
Defendants.   )
)

## FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This is an action for fraud, breach of contract, trademark infringement, trademark dilution,

and unfair competition based on the operation of a Baskin-Robbins franchise located in Lake

Charles, Louisiana, by Defendants Tommy's R.V. Rentals, Inc., Tommy Joyce, and Marlene

Joyce, and a Baskin-Robbins franchise located in Moss Bluff, Louisiana, by Defendants Tommy's

R.V. Rentals, Inc. and Tommy Joyce.  Plaintiffs Baskin-Robbins Incorporated and Baskin-

Robbins USA, Co. file this amended complaint as of right, pursuant to Fed. R. Civ. P. 15(a), as no

pleading responsive to their initial Complaint has been served, and allege the following:

SCANNED



## PARTIES

1.

Plaintiff Baskin-Robbins Incorporated is a Delaware corporation with its principal place of business at 14 Pacella Park Drive, Randolph, Massachusetts. Plaintiff Baskin-Robbins U.S.A., Co. is a California corporation with its principal place of business at 14 Pacella Park Drive, Randolph, Massachusetts (unless otherwise specified, Baskin-Robbins Incorporated and Baskin-Robbins U.S.A., Co. are collectively referred to hereinafter as "Baskin-Robbins"). Baskin-Robbins franchisees are licensed to use the Baskin-Robbins trade names, service marks, and trademarks and to operate under the Baskin-Robbins system, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.

Defendant Tommy's R.V. Rentals, Inc. is a Louisiana corporation with its principal places of business at 149 West Prien Lake Road, Lake Charles, Louisiana, and 2912 Roxton Street, Sulphur, Louisiana. At all times relevant to this action, Defendant Tommy's R.V. Rentals, Inc. was the owner and operator of a retail ice cream store located at 149 West Prien Lake Road, Lake Charles, Louisiana. Defendant Tommy's R.V. Rentals, Inc. was a Baskin-Robbins franchisee for the store pursuant to a Franchise Agreement dated January 25, 1994 (the "Lake Charles Franchise Agreement"). Defendant Tommy's R.V. Rentals, Inc. was licensed to use the Baskin-Robbins trademarks, trade name and trade dress in accordance with the terms of the Lake Charles Franchise Agreement.

2

3.

Defendant Tommy Joyce is a natural person and a resident and citizen of the State of Louisiana. At all times relevant to this action, Defendant Tommy Joyce was the owner and operator of a retail ice cream store located at 149 West Prien Road, Lake Charles, Louisiana. Defendant Tommy Joyce is an officer and/or shareholder of Defendant Tommy's R.V. Rentals, Inc. Defendant Tommy Joyce has adopted and agreed to be bound by all the terms and conditions of the Lake Charles Franchise Agreement and has personally guaranteed the obligations of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of Corporate Sublease and Corporate Franchisee.

4.

Defendant Marlene Joyce is a natural person and a resident and citizen of the State of Louisiana. At all times relevant to this action, Defendant Marlene Joyce was the owner and operator of a retail ice cream store located at 149 West Prien Lake Road, Lake Charles, Louisiana. Defendant Marlene Joyce is an officer and/or shareholder of Defendant Tommy's R.V. Rentals, Inc. Defendant Marlene Joyce has adopted and agreed to be bound by all the terms and conditions of the Lake Charles Franchise Agreement and has personally guaranteed the obligations of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of Corporate Sublease and Corporate Franchisee.

5.

At all times relevant to this action, Defendant Tommy's R.V. Rentals, Inc. was also the owner and operator of a retail ice cream store located at 112 N. Highway 171, Moss Bluff, Louisiana, and was a Baskin-Robbins franchisee for the Moss Bluff store pursuant to a Franchise

3

Agreement dated March 8, 1997 (the "Moss Bluff Franchise Agreement"). Defendant Tommy's R.V. Rentals, Inc. was licensed to use the Baskin-Robbins trademarks, trade name and trade dress in accordance with the terms of the Moss Bluff Franchise Agreement.

6.

At all times relevant to this action, Defendant Tommy Joyce was also the owner and operator of a retail ice cream store located at 112 N. Highway 171, Moss Bluff, Louisiana. Defendant Tommy Joyce is an officer and/or shareholder of Defendant Tommy's R.V. Rentals, Inc. Defendant Tommy Joyce has adopted and agreed to be bound by all the terms and conditions of the Moss Bluff Franchise Agreement and has personally guaranteed the obligations of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of Corporate Sublease and Corporate Franchisee.

## JURISDICTION

7.

This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332, 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of costs and interest.

8.

This Court has *in personam* jurisdiction over Defendants because they are residents of this District who also conduct business in this District.

## VENUE

9.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

4

## FACTS COMMON TO ALL COUNTS

10.

Baskin-Robbins Incorporated is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks.  Baskin-Robbins Incorporated has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

11.

Baskin-Robbins USA, Co. has been licensed by Baskin-Robbins Incorporated to grant franchises for the operation of Baskin-Robbins stores within the area in which Defendants' Baskin-Robbins franchise is located.  Baskin-Robbins USA, Co. is authorized to use Baskin-Robbins Incorporated's trademarks, service marks and trade name and to sub-license Baskin-Robbins franchisees to use these marks and trade name.

12.

Baskin-Robbins Incorporated owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks.  Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

13.

The Baskin-Robbins trademarks are utilized in interstate commerce.

14.

The Baskin-Robbins marks have been widely advertised and promoted by Baskin-Robbins over the years.  As a result, the Baskin-Robbins marks have become famous throughout the

United States.

15.

Baskin-Robbins and its franchisees currently operate more than 2,500 stores in the United

States and more than 2,200 stores outside of the United States.  In the fifty years since the

Baskin-Robbins system was created, millions of consumers have been served in Baskin-Robbins

stores.

16.

As a result of the extensive sales, advertising, and promotion of items identified by the

Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks,

and to associate them exclusively with products and services offered by Baskin-Robbins and its

franchisees.  The Baskin-Robbins marks are among the best and most widely known trademarks in

the United States today, and are assets of inestimable value to Baskin-Robbins, representing and

embodying Baskin-Robbins' considerable goodwill and favorable reputation.

17.

Maintenance of the highest standards of appearance, product quality, cleanliness,

sanitation and customer service are essential to the development and maintenance of the

reputation and goodwill of Baskin-Robbins.  These standards are important to Baskin-Robbins

and to each and every one of its franchisees.  Uniformity of appearance, products offered, service,

and overall experience by consumers throughout the Baskin-Robbins System is also vital to

develop and protect Baskin-Robbins' goodwill and reputation.

## The Lake Charles Franchise Agreement

18.

On or about January 25, 1994, Baskin-Robbins and Defendant Tommy's R.V. Rentals, Inc. entered into a Franchise Agreement under which Baskin-Robbins licensed Tommy's R.V. Rentals, Inc. to operate an ice cream store at 149 W. Prien Lake Road in Lake Charles, Louisiana, utilizing Baskin-Robbins' trade names, trademarks, trade dress, proprietary marks, and the Baskin-Robbins System.

19.

Defendant Tommy's R.V. Rentals, Inc. was licensed to use the Baskin-Robbins trademarks, trade names, and trade dress in accordance with the terms of the Lake Charles Franchise Agreement.

20.

Defendants Tommy Joyce and Marlene Joyce adopted and agreed to be bound by all the terms and conditions of the Lake Charles Franchise Agreement and personally guaranteed the obligations of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of Corporate Sublease and Corporate Franchisee.

21.

The Lake Charles Franchise Agreement contains numerous acknowledgments and agreements by Defendants concerning the importance of maintaining Baskin-Robbins' standards for uniformity, customer service, and product quality. The applicable paragraphs include:

a. Section 5.2: "In order to promote and protect the value of the Proprietary Names and Marks and the System, including the goodwill and reputation of BASKIN-ROBBINS stores and the business thereof, and the business

7

interests of the parties hereto, and to insure optimum quality control as to the Products and services provided and sold in BASKIN-ROBBINS stores, FRANCHISEE acknowledges and agrees that substantial uniformity must be maintained in the quality, type and standard of BASKIN-ROBBINS stores similar to that franchised hereunder, and in the facilities, Products, services and operations thereof.  Therefore, FRANCHISEE agrees to operate the Store in accordance with the provisions of this Agreement and such other of BASKIN-ROBBINS' reasonable requirements with respect to the operation of BASKIN-ROBBINS stores as may be prescribed to FRANCHISEE from time to time (hereinafter collectively referred to as the "Standards");"

b.   Section 5.6: "FRANCHISEE further acknowledges and agrees that BASKIN-ROBBINS shall have sole control and discretion over the development of the System and the designation of the Products and services to be offered in the Store, and that FRANCHISEE will comply with BASKIN-ROBBINS' requirements in that regard;"

c.   Section 6.1: "FRANCHISEE shall maintain in sufficient supply, and use and/or sell at all times, only such Products and Supplies as meet BASKIN-ROBBINS' standards and specifications (from which FRANCHISEE shall not deviate without BASKIN-ROBBINS' prior written consent) and as are expressly approved for use and/or sale in writing by BASKIN-ROBBINS; FRANCHISEE shall sell or offer for sale all types of Products and services specified by BASKIN-ROBBINS; and shall discontinue selling and offering for sale any Products or services which BASKIN-ROBBINS may, in its sole discretion, disapprove in writing at any time;"

d.   Section 6.3: "FRANCHISEE shall sell, distribute and deliver Products only in such weights, sizes, forms and packages as are approved in writing by BASKIN-ROBBINS from time to time;" and

e.   Section 7.1: "AREA FRANCHISOR agrees to supply to FRANCHISEE, and FRANCHISEE agrees to purchase from AREA FRANCHISOR, all of the Store's requirements for the Products described in Section 1.1.1 as shall be specified by BASKIN-ROBBINS from time to time in the Standards, at AREA FRANCHISOR's wholesale prices at the time of delivery.  Such Products will be of the variety of kinds and flavors which from time to time are selected by BASKIN-ROBBINS for supply to BASKIN-ROBBINS FRANCHISEES . . . .";

8

22.

The Lake Charles Franchise Agreement contains acknowledgments and agreements by the

Defendants concerning the importance of enhancing the goodwill Baskin-Robbins has created.

For example, the applicable paragraphs of the Franchise Agreement include:

a.     Section 5.1: "FRANCHISEE agrees to use its best efforts to enhance the
        goodwill which BASKIN-ROBBINS has created for the Proprietary
        Names and Marks and for the System, including, without limitation,
        operating the Store and promoting the retail sale of Products and services
        in such manner as will further enhance the goodwill of, and customer
        demand for, Products and services."

b.     Section 10.2.1: "FRANCHISEE shall use only the Proprietary Names and
        Marks designated by BASKIN-ROBBINS, and shall use them only in the
        manner expressly authorized and permitted by BASKIN-ROBBINS."

c.     Section 10.2.2: "FRANCHISEE may use the Baskin-Robbins service
        marks for the operation of the Store only at the Premises or in advertising
        for the authorized business conducted at or from the Premises.
        FRANCHISEE may use the Baskin-Robbins trademarks only in
        advertising of the Products described in section 1.1.1."

d.     Section 10.2.5: "Any unauthorized use of the Proprietary Names and
        Marks shall constitute an infringement of BASKIN-ROBBINS' rights and
        an event of default under Section 16.4."

e.     Section 10.3.7: "FRANCHISEE shall not engage in any trade practice or
        other activity which is harmful to the goodwill of, or reflects unfavorably
        on the reputation of BASKIN-ROBBINS, BASKIN-ROBBINS stores, the
        System, the Products, the Proprietary Names and Marks, AREA
        FRANCHISOR or FRANCHISEE, or which constitutes deceptive or
        unfair competition, or which is in violation of any applicable laws."

f.     Section 15.2: "FRANCHISEE acknowledges that, pursuant to this
        Agreement, FRANCHISEE will receive valuable specialized training and
        trade secrets, including, without limitation, confidential information
        regarding the operational, sales, promotional and marketing methods and
        techniques of BASKIN-ROBBINS and the System. FRANCHISEE
        covenants that, except as otherwise approved in writing by BASKIN-

ROBBINS, FRANCHISEE shall not, during the term of this Agreement, either directly or indirectly . . . :"

> 15.2.1. "divert or attempt to divert any business or customer of the Store to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Names and Marks or the System";

g.    Section 15.8. "FRANCHISEE acknowledges that FRANCHISEE's violation of any of the terms of this Section 15 would result in irreparable injury to BASKIN-ROBBINS for which no adequate remedy at law may be available, and FRANCHISEE accordingly consents to the issuance of an injunction prohibiting any conduct by FRANCHISEE in violation of the terms of this Section 15, without the requirement for the posting of bond, the same being hereby waived by FRANCHISEE."

23.

The Lake Charles Franchise Agreement also contains the following acknowledgments and agreements by Defendants concerning the payment of royalty and advertising fees, and the accurate reporting of gross sales. The applicable provisions include the following:

a.    Section 4.1: to pay a continuing monthly royalty fee in an amount equal to one-half percent (.5%) of gross sales.

b.    Section 12.1.1: to make a monthly contribution of one and one-half percent (1.5%) of the store's monthly gross sales to the national fund for System and Product advertising.

c.    Section 12.2: to make a monthly contribution of two percent (2%) of the store's monthly gross sales to the regional advertising fund.

d.    Section 13.1.3: to submit to Baskin-Robbins, on a monthly basis, a gross sales report "reflecting all gross sales during the preceding calendar month.," and, on an annual basis, a balance sheet and profit and loss statement "prepared in accordance with generally accepted accounting principles."

e.    Section 13.1.1: to prepare and maintain, and to preserve for at least five (5) years, "full, complete, true and accurate" records and books of account in accordance with generally accepted accounting principles, consistently applied, including,

10

without limitation, original invoices, sales records, sales slips, sales checks, sales reports, all source documents, including, but not limited to, cash register tapes, records of bank deposits, inventories prepared as of the close of the applicable accounting period, income, sales and occupation tax returns, profit and loss statements, general ledger, balance sheet, all other reports made to any governmental taxing and regulatory agencies, all other original records pertaining to the Store, and other pertinent papers and documents which permit a determination of the gross sales of the store.

f.   Section 13.2: to make available for inspection at reasonable times the books, records and tax returns of both the named franchisee as well as any and all persons or entities who are guarantors.

g.   Section 13.2: to pay the cost and expense, including reasonable accounting and legal fees, of (1) any inspection, audit, or reconstruction of the franchise's books and records necessitated by a failure to produce documents adequate to establish gross sales, and/or (2) any inspection, audit or reconstruction that discloses an understatement in any report of gross sales to Baskin-Robbins of two percent (2%) or more.

h.   Sections 13.2 and 4.3: to pay interest on unpaid monies due.

24.

The Lake Charles Franchise Agreement contains acknowledgments and agreements by the

Defendants concerning the effect of breaching the Agreement.  For example, the applicable

paragraphs include:

a.   Section 16.3: "FRANCHISEE shall be deemed to be in default under this Agreement upon the occurrence of any of the following events, and BASKIN-ROBBINS (or AREA FRANCHISOR with the concurrence of BASKIN-ROBBINS) may, at its option, terminate this Agreement and all rights granted FRANCHISEE hereunder, without affording FRANCHISEE any opportunity to cure the default, effective immediately upon written notice from AREA FRANCHISOR;"

b.   Section 16.3.4: "If FRANCHISEE permits the use of the Store or Premises for any illegal or unauthorized purpose, including, without limitation, palming off or substitution of Products under the Proprietary Names and Marks or other marks of BASKIN-ROBBINS;" or

11

c.     Section 16.3.6: "If FRANCHISEE offers for sale or sells unauthorized Products or services from the Store;" or

d.     Section 16.3.8: "If FRANCHISEE fails to comply with the in-term covenants set forth in Section 15;" or

e.     Section 16.3.11: "If FRANCHISEE knowingly maintains false books or records, or knowingly submits any false reports to BASKIN-ROBBINS or to AREA FRANCHISOR."

25.

The Lake Charles Franchise Agreement, at Section 15.3, contains a covenant under which Defendants agreed that for a period of two (2) years following termination or expiration, they would not either directly or indirectly own, maintain, operate, engage in, or have any interest in any business the same or similar to a Baskin-Robbins ice cream store and which is located in the same building or group of buildings where Defendants' Lake Charles Baskin-Robbins store was located.

26.

The Lake Charles Franchise Agreement contains acknowledgments and agreements by Defendants concerning their obligations upon termination or expiration of the Lake Charles Franchise Agreement. The applicable provisions include the following:

a.     Section 17.1: "Upon expiration or termination of this Agreement, all right of FRANCHISEE to use the Proprietary Names and Marks and the System and to operate the Store within the System or under the Proprietary Names and Marks shall terminate and:"

Section 17.1.2: "FRANCHISEE shall immediately cease to operate the Store, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former FRANCHISEE of BASKIN-ROBBINS;"

Section 17.1.3: "FRANCHISEE shall immediately and permanently cease

12

to use, in any manner whatsoever, the System, including, without limitation, methods, procedures and techniques associated therewith, and all Proprietary Names and Marks and distinctive forms, slogans, symbols, and devices associated with the System or the Products.  In particular, FRANCHISEE shall cease to use, without limitation, all signs and advertising materials, displays, stationery, forms, and any other articles which display the Proprietary Names and Marks;"

Section 17.1.6: "FRANCHISEE shall immediately sell to AREA FRANCHISOR (who hereby agrees to purchase) all of FRANCHISEE's Products and Supplies bearing the Proprietary Names and Marks, at FRANCHISEE's purchase cost . . . ."

27.

Pursuant to the applicable provisions of the Lake Charles Franchise Agreement, on or about June 16, 2000, Baskin-Robbins sent Defendants a Notice of Default and Termination of Franchise Agreement and Notice of Termination of Ice Cream Deliveries terminating the Lake Charles Franchise Agreement, and demanding that Defendants immediately comply with their post-termination obligations under the Lake Charles Franchise Agreement, including but not limited to ceasing to use Baskin-Robbins' proprietary marks.

28.

Pursuant to the applicable provisions of the Lake Charles Franchise Agreement, on or about August 9, 2000, Baskin-Robbins sent Defendants a Supplemental Notice of Termination and Notice of Expiration of Franchise Agreement terminating the Lake Charles Franchise Agreement and citing the following grounds: (1) failing to maintain accurate records of Gross Sales and other accounting records and supporting documentation, and to report all Gross Sales and pay franchise and advertising fees as required by the relevant provisions of the Lake Charles Franchise Agreement, (2) engaging in conduct injurious or prejudicial to the goodwill associated with Baskin-Robbins' proprietary names, marks, and system, (3) using the Lake Charles store for

13

an illegal or unauthorized purpose, and (4) engaging in activity violative of applicable tax laws.  In that Notice, Baskin-Robbins further stated that the Franchise Agreement had expired September 30, 1998, without renewal, that it had continued on a month-to-month basis thereafter, and that it had effectively terminated with the June 16, 2000 Notice of Default and Termination of Franchise Agreement and Notice of Termination of Ice Cream Deliveries.

29.

On August 4, 2000, a Baskin-Robbins representative inspected the Lake Charles store. The representative found that the Lake Charles store was still being operated as an ice cream store, and was still selling Baskin-Robbins ice cream.

30.

The Lake Charles Franchise Agreement provides that in the event of termination for any default, Defendants shall pay to Baskin-Robbins all damages, costs, and expenses, including attorneys' fees, incurred by Baskin-Robbins  (¶ 17.1.1).  Defendants also agreed to pay all costs and expenses, including reasonable attorneys' fees, incurred in enforcing the covenants contained in paragraph 15 of the Lake Charles Franchise Agreement.  (¶¶ 15.7, 25.6).  Defendants also agreed that if Baskin-Robbins was the prevailing party in any legal action between the parties, they would pay all of Baskin-Robbins' legal expenses.  (¶ 25.6).

**The Moss Bluff Franchise Agreement**

31.

On or about March 8, 1997, Baskin-Robbins and Defendant Tommy's R.V. Rentals, Inc. entered into a Franchise Agreement under which Baskin-Robbins licensed Tommy's R.V. Rentals, Inc. to operate an ice cream store at 112 North Highway 171 in Moss Bluff, Louisiana, utilizing

14

Baskin-Robbins' trade names, trademarks, trade dress, proprietary marks, and the Baskin-Robbins System.

32.

Defendant Tommy's R.V. Rentals, Inc. is licensed to use the Baskin-Robbins trademarks, trade names, and trade dress in accordance with the terms of the Moss Bluff Franchise Agreement.

33

Defendant Tommy Joyce adopted and agreed to be bound by all the terms and conditions of the Moss Bluff Franchise Agreement and personally guaranteed the obligations of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of Corporate Sublease and Corporate Franchisee.

34.

The Moss Bluff Franchise Agreement contains numerous acknowledgments and agreements by Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce concerning the accurate reporting of gross sales. The provisions agreed to by Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce include the following:

a.  Section 3.3: to pay a continuing monthly royalty fee in an amount equal to one-half percent (.5%) of gross sales.

b.  Section 12.1.1: to make a monthly contribution of one and one-half percent (1.5%) of the store's monthly gross sales to the national fund for System and Product advertising.

c.  Section 12.2: to make a monthly contribution of up to two percent (2%) of the store's monthly gross sales to the regional advertising fund.

d.  Section 13.1.3: to submit to Baskin-Robbins, on a monthly basis, a gross sales

15

report "reflecting all gross sales during the preceding calendar month.," and, on an annual basis, an annual financial statement, including a balance sheet and profit and loss statement "prepared in accordance with generally accepted accounting principles."

e.   Section 13.1.1: to prepare and maintain, and to preserve for at least three (3) years, "full, complete, true and accurate" records and books of account in accordance with generally accepted accounting principles, consistently applied, including, without limitation, original invoices, sales records, sales slips, sales checks, sales reports, all source documents, including, but not limited to, cash register tapes, records of bank deposits, inventories prepared as of the close of the applicable accounting period, income, sales and use tax returns, profit and loss statements, general ledger, balance sheet, all other reports made to any governmental taxing and regulatory agencies, all other original records pertaining to the Store, and other pertinent papers and documents which permit a determination of the gross sales of the store.

f.   Section 13.2: to make available for inspection at reasonable times the books, records and tax returns of both the named franchisee as well as any and all persons or entities who are guarantors.

g.   Section 13.2: to pay the cost and expense, including reasonable accounting and legal fees, of any inspection or audit that discloses an understatement in any report of gross sales to Baskin-Robbins of two percent (2%) or more.

i.   Sections 13.2 and 3.5: to pay interest on unpaid monies due.

35.

The Moss Bluff Franchise Agreement contains acknowledgments and agreements by Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce that they would do nothing injurious or prejudicial to the goodwill associated with the Baskin Robbins proprietary names and marks, and that they would not engage in any illegal activity.  The applicable provisions include the following:

a.   Section 15.2: "FRANCHISEE covenants that . . . FRANCHISEE shall not, during the term of this Agreement, either indirectly or directly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, or corporation:

16

Section 15.2.1: ". . . do or perform, directly or indirectly, any . . . act injurious or prejudicial to the goodwill associated with the Proprietary Names and Marks or the System."

b.    Section 10.3.7: "FRANCHISEE shall not engage in any . . . activity which is harmful to the goodwill of, or reflects unfavorably on the reputation of BASKIN-ROBBINS, the Retail Units, the System, the Products, the Proprietary Names and Marks, . . . or which is in violation of any applicable laws."

36.

The Moss Bluff Franchise Agreement contains acknowledgments and agreements by

Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce concerning the effect of breaching the

Moss Bluff Franchise Agreement.  For example, the applicable paragraphs include:

Section 16.3: "FRANCHISEE shall be deemed to be in default under this Agreement upon the occurrence of any of the following events, [and] BASKIN-ROBBINS may, at its option, terminate this Agreement and all rights granted FRANCHISEE hereunder, without affording FRANCHISEE any opportunity to cure the default, effective immediately upon written notice from AREA FRANCHISOR."

Section 16.3.4: "If FRANCHISEE permits the use of the Retail Unit or Premises for any illegal or unauthorized purpose . . . ."

Section 16.3.8: "If FRANCHISEE fails to comply with the in-term covenants set forth in Section 15."

Section 16.3.11: "If FRANCHISEE fails to maintain the books and records required under Section 13, knowingly maintains false books or records, or knowingly submits any false reports to BASKIN-ROBBINS."

37.

Pursuant to the applicable provisions of the Moss Bluff Franchise Agreement, on or about

August 9, 2000, Baskin-Robbins sent Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce

a Notice of Default and Termination and Notice of Franchise Expiration terminating the Moss

Bluff Franchise Agreement on the following grounds: (1) failing to maintain accurate

17

records of Gross Sales and other accounting records and supporting documentation, and to report all Gross Sales and pay franchise and advertising fees as required by the relevant provisions of the Moss Bluff Franchise Agreement, (2) engaging in conduct injurious or prejudicial to the goodwill associated with Baskin-Robbins' proprietary names, marks, and system, (3) using the Moss Bluff store for an illegal or unauthorized purpose, and (4) engaging in activity violative of applicable tax laws. In that Notice, Baskin-Robbins further stated that the  the Moss Bluff Franchise Agreement had expired by its terms on January 31, 2000 without renewal.

38.

The Moss Bluff Franchise Agreement provides that in the event of termination for any default, Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce shall pay to Baskin-Robbins all damages, costs, and expenses, including attorneys' fees, incurred by Baskin-Robbins (¶ 17.1.1). Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce also agreed to pay all costs and expenses, including reasonable attorneys' fees, incurred in enforcing the covenants contained in paragraph 15 of the Moss Bluff Franchise Agreement. (¶¶ 15.7, 25.6). Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce also agreed that if Baskin-Robbins was the prevailing party in any legal action between the parties, they would pay all of Baskin-Robbins' legal expenses. (¶ 25.6).

## COUNT I: FRAUD -- ALL DEFENDANTS

39.

The allegations of Paragraphs 1 through 38 are hereby incorporated by reference.

40.

At a date unknown but at some time after January 25, 1994, Defendants entered into a

18

scheme to defraud Baskin-Robbins.

41.

It was an object of the scheme to pay Baskin-Robbins less than the actual amount of money due each month as royalty fees and advertising fees.

42.

It was part of the scheme to misrepresent and conceal the actual amount of gross sales made in connection with the franchised businesses.

43.

It was part of the scheme to report gross sales figures to Baskin-Robbins that differed from those actually achieved.

44.

It was part of the scheme to fail to record all sales on the businesses' cash registers or other devices approved by Plaintiff.

45.

It was part of the scheme to prepare fraudulent reports of sales and transmit those reports by mail to Baskin-Robbins headquarters.

46.

It was part of the scheme to falsify the businesses' books and records.

47.

It was part of the scheme to fail to keep or to destroy the production and throwaway records indicating products available for sale.

19

48.

It was part of the scheme to fail to complete and retain proper inventory records.

49.

In furtherance of the scheme, Defendants

a)  misrepresented and concealed the actual gross sales of the franchises;

b)  reported gross sales figures to Baskin-Robbins that differed from those
actually achieved;

c)  failed to ring and record all sales on the businesses' cash registers or
equivalent devices;

d)  prepared and transmitted fraudulent reports to Baskin-Robbins;

e)  falsified the businesses' books and records;

f)  failed to keep or destroyed the production and throwaway records; and

g)  failed to complete and retain proper inventory records.

50.

The total amount of gross sales concealed cannot be stated at this time.

51.

The scheme to defraud entailed the active misrepresentation of material facts, including
the amount of gross sales made each month and the amount due as royalty and advertising fees
pursuant to the Franchise Agreements.

52.

The scheme to defraud was devised and executed willfully and maliciously, with the
specific intent to defraud Baskin-Robbins of the money owed under the Franchise Agreements.

20

53.

Baskin-Robbins relied upon the misrepresentations and fraudulent omissions of the

Defendants, to its detriment and pecuniary loss.

54.

The conduct described above constitutes fraud that cannot be "cured" as a matter of law,

and is good cause for terminating the Defendants' Franchise Agreements.  This conduct also

constitutes intentional underreporting of gross sales and falsification of financial data, for which

no cure period is available under Paragraph 16.3.11 of the Lake Charles Franchise Agreement and

Paragraph 16.3.11 of the Moss Bluff Franchise Agreement, and is good cause for terminating

those Franchise Agreements.

55.

As a direct and proximate result of Defendants' conduct, Baskin-Robbins has incurred

substantial losses, fees, and expenses.

## **COUNT 2: BREACH OF CONTRACT -- ALL DEFENDANTS**

56.

The allegations of paragraphs 1 through 55 are hereby incorporated by reference.

57.

The conduct described in paragraphs 40 through 52 herein constitutes breaches of the

contractual provisions of the Lake Charles and Moss Bluff Franchise Agreements described in

paragraphs 22, 23, 24, 34, 35, and 36.

58.

As a direct and proximate result of these breaches, Baskin-Robbins has incurred

21

substantial losses, fees, and expenses in an amount yet to be determined.

## COUNT 3: BREACH OF CONTRACT -- LAKE CHARLES STORE

59.

The allegations of paragraphs 1 through 58 are hereby incorporated by reference.

60.

Defendants have offered for sale or sold ice cream and/or other products at the Lake Charles Store that are not approved for use by Baskin-Robbins in its franchised stores. Such conduct constitutes a material breach of the terms of the Franchise Agreement.

61.

Pursuant to the applicable provisions of the Franchise Agreement, on or about June 16, 2000, Baskin-Robbins sent the Defendants a notice of termination terminating the Lake Charles Franchise Agreement, and demanding that the Defendants immediately comply with their post-termination obligations under the Lake Charles Franchise Agreement, including but not limited to that Defendants cease using Baskin-Robbins' proprietary marks.

62.

Defendants have failed to comply with their post-termination obligations under the Lake Charles Franchise Agreement.

63.

Defendants are continuing to operate an ice cream store in the same building or group of buildings in which their Baskin-Robbins store was located, in violation of the Lake Charles Franchise Agreement's covenant not to compete.

22

64.

As a direct and proximate result of Defendants' conduct, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount yet to be determined.

## COUNT 4:  TRADEMARK INFRINGEMENT -- LAKE CHARLES STORE

65.

The allegations of paragraphs 1 through 64 are hereby incorporated by reference.

66.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name while selling or offering to sell unapproved products, outside the scope of the Lake Charles Franchise Agreement and without the consent of Baskin-Robbins, was likely to confuse or deceive the public into believing, contrary to fact, that the Defendants' unauthorized activities were licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins.  Such continued use of the Baskin-Robbins trademarks and trade name infringed Baskin-Robbins' exclusive rights in the Baskin-Robbins trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and the common law.

67.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name after the termination of their Franchise Agreement was likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants were licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins.  Such continued use of the Baskin-Robbins trademarks and trade name infringed Baskin-Robbins' exclusive rights

23

the termination of their Franchise Agreement was likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of goods, services or commercial activities. Such unauthorized use of the Baskin-Robbins trademark and trade name violated § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and the common law.

73.

Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

74.

As a result of the Defendants' unfair competition, Baskin-Robbins has incurred and is likely to incur substantial losses, fees, and expenses, including irreparable injury to the goodwill associated with the Baskin-Robbins trade name and trademarks.

**PRAYER FOR RELIEF**

WHEREFORE, Baskin-Robbins prays that this Court:

a.      Enter a judgment in favor of Baskin-Robbins for the damages incurred by Baskin-Robbins as a result of Defendants' breaches of the Franchise Agreement, including, but not limited to, lost royalty fees;

b.      Enter judgment in favor of Baskin-Robbins against Defendants for the damages incurred by Baskin-Robbins as a result of Defendants' fraud;

c.      Award Baskin-Robbins exemplary or punitive damages against Defendants because of the wilful, intentional, and malicious nature of Defendants' conduct;

d.      Enter an injunctive order directing Defendants to account to Baskin-Robbins for all sales made and receipts earned during the term of the franchise relationship;

25

e.      Enter an injunctive order ratifying and enforcing the termination of the Franchise

Agreements *nunc pro tunc*;

f.      Enjoin the Defendants and all those acting in concert with them from infringing

upon the Baskin-Robbins trademarks and trade name and from otherwise engaging in unfair

competition with Baskin-Robbins;

g.      Enter an injunctive order directing Defendants to comply with the post-termination

obligations under the Franchise Agreements;

h.      Enter an injunctive order directing Defendants to comply with the covenants not to

compete contained in the Franchise Agreements;

i.      Enter an injunctive order directing Defendants to file with the Court and serve on

Baskin-Robbins within thirty (30) days after service upon Defendants of the injunction, a report in

writing under oath setting forth in detail the manner and form in which Defendants have complied

with the injunction;

j       Award Baskin-Robbins judgment against Defendants for the damages Baskin-

Robbins has sustained and the profits the Defendants have derived as a result of their actions, and

that such damages be assessed in a separate accounting procedure and trebled in accordance with

§ 35 of the Lanham Act, 15 U.S.C. § 1117;

k.      Award Baskin-Robbins prejudgment interest in accordance with § 35 of the

Lanham Act, 15 U.S.C. § 1117;

l.      Award Baskin-Robbins its costs and attorneys' fees incurred in connection with

this action, pursuant to contract, § 35 of the Lanham Act, 15 U.S.C. § 1117; and

26

m.      Award Baskin-Robbins such other relief as this Court may deem just and proper.

Respectfully submitted,

Robert L. Zisk
Jeffrey L. Karlin
Thomas M. Finan
SCHMELTZER, APTAKER & SHEPARD, P.C.
2600 Virginia Avenue, N.W., Suite 1000
Washington, D.C.  20037
Telephone:     (202) 333-8800
Facsimile:     (202) 625-3311

Edward D. Wegmann (No.13315)
JONES, WALKER, WAECHTER, POITEVENT,
  CARRERE & DENEGRE, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone:     (504) 582-8000
Facsimile:     (504) 582-8011

ATTORNEYS FOR THE PLAINTIFFS
BASKIN-ROBBINS INCORPORATED
AND BASKIN-ROBBINS, USA, CO.

Dated: August 9, 2000

27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Amended Complaint was served by certified mail, return receipt requested, on this 9th day of August, 2000 on the following:

Van C. Seneca, Esq.
Van C. Seneca, L.L.C.
1135 Lakeshore Drive, 5th Floor, Suite A
Lake Charles, LA 70601

Tommy's R.V. Rentals, Inc.
112 North Highway 171
Moss Bluff, LA 70611

Tommy's R.V. Rentals, Inc.
149 West Prien Lake Road
Lake Charles, LA 70601

Tommy Joyce
2912 Roxton Street
Sulphur, LA 70663

Marlene Joyce
2912 Roxton Street
Sulphur, LA 70663

Jeffrey L. Karlin

RECEIVED

OCT 3 0 2000

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

NOV - 1 2000

ROBERT _____ CLERK
BY_____ PAM _____
                    DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

|  |  |
|---|---|
| BASKIN-ROBBINS INCORPORATED, a Delaware Corporation, and BASKIN-ROBBINS USA, CO. a California Corporation, | CIVIL ACTION<br><br>NO. 00-CV-1522<br><br>JUDGE JAMES T. TRIMBLE, JR. |
| Plaintiffs, |  |
| versus | MAGISTRATE JUDGE ALONZO P. WILSON |
| TOMMY'S R.V. RENTALS, INC., a Louisiana Corporation, TOMMY JOYCE, and MARLENE JOYCE, |  |
| Defendants. |  |

## SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This is an action for fraud, breach of contract, trademark infringement, trademark dilution, and unfair competition based on the operation of a Baskin-Robbins franchise located in Lake Charles, Louisiana, by Defendants Tommy's R.V. Rentals, Inc., Tommy Joyce, and Marlene Joyce, and a Baskin-Robbins franchise located in Moss Bluff, Louisiana, by Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce. Plaintiffs Baskin-Robbins Incorporated and Baskin-Robbins USA, Co. allege the following:





SCANNED

## PARTIES

1.

Plaintiff Baskin-Robbins Incorporated is a Delaware corporation with its principal place

of business at 14 Pacella Park Drive, Randolph, Massachusetts.  Plaintiff Baskin-Robbins

U.S.A., Co. is a California corporation with its principal place of business at 14 Pacella Park

Drive, Randolph, Massachusetts (unless otherwise specified, Baskin-Robbins Incorporated and

Baskin-Robbins U.S.A., Co. are collectively referred to hereinafter as "Baskin-Robbins").

Baskin-Robbins franchisees are licensed to use the Baskin-Robbins trade names, service marks,

and trademarks and to operate under the Baskin-Robbins system, which involves the production,

merchandising, and sale of ice cream and related products utilizing special equipment, equipment

layouts, interior and exterior accessories, identification schemes, products, management

programs, standards, specifications, proprietary marks, and information.

2.

Defendant Tommy's R.V. Rentals, Inc. is a Louisiana corporation with its principal

places of business at 149 West Prien Lake Road, Lake Charles, Louisiana, and 2912 Roxton

Street, Sulphur, Louisiana.  At all times relevant to this action, Defendant Tommy's R.V.

Rentals, Inc. was the owner and operator of a retail ice cream store located at 149 West Prien

Lake Road, Lake Charles, Louisiana.  Defendant Tommy's R.V. Rentals, Inc. was a Baskin-

Robbins franchisee for the store pursuant to a Franchise Agreement dated January 25, 1994 (the

"Lake Charles Franchise Agreement").  Defendant Tommy's R.V. Rentals, Inc. was licensed to

use the Baskin-Robbins trademarks, trade name and trade dress in accordance with the terms of

the Lake Charles Franchise Agreement.

2

3.

Defendant Tommy Joyce is a natural person and a resident and citizen of the State of Louisiana. At all times relevant to this action, Defendant Tommy Joyce was the owner and operator of a retail ice cream store located at 149 West Prien Road, Lake Charles, Louisiana. Defendant Tommy Joyce is an officer and/or shareholder of Defendant Tommy's R.V. Rentals, Inc. Defendant Tommy Joyce has adopted and agreed to be bound by all the terms and conditions of the Lake Charles Franchise Agreement and has personally guaranteed the obligations of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of Corporate Sublease and Corporate Franchisee.

4.

Defendant Marlene Joyce is a natural person and a resident and citizen of the State of Louisiana. At all times relevant to this action, Defendant Marlene Joyce was the owner and operator of a retail ice cream store located at 149 West Prien Lake Road, Lake Charles, Louisiana. Defendant Marlene Joyce is an officer and/or shareholder of Defendant Tommy's R.V. Rentals, Inc. Defendant Marlene Joyce has adopted and agreed to be bound by all the terms and conditions of the Lake Charles Franchise Agreement and has personally guaranteed the obligations of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of Corporate Sublease and Corporate Franchisee.

5.

At all times relevant to this action, Defendant Tommy's R.V. Rentals, Inc. was also the owner and operator of a retail ice cream store located at 112 N. Highway 171, Moss Bluff, Louisiana, and was a Baskin-Robbins franchisee for the Moss Bluff store pursuant to a Franchise

3

Agreement dated March 8, 1997 (the "Moss Bluff Franchise Agreement").  Defendant Tommy's

R.V. Rentals, Inc. was licensed to use the Baskin-Robbins trademarks, trade name and trade

dress in accordance with the terms of the Moss Bluff Franchise Agreement.

6.

At all times relevant to this action, Defendant Tommy Joyce was also the owner and

operator of a retail ice cream store located at 112 N. Highway 171, Moss Bluff, Louisiana.

Defendant Tommy Joyce is an officer and/or shareholder of Defendant Tommy's R.V. Rentals,

Inc.  Defendant Tommy Joyce has adopted and agreed to be bound by all the terms and

conditions of the Moss Bluff Franchise Agreement and has personally guaranteed the obligations

of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of

Corporate Sublease and Corporate Franchisee.

## JURISDICTION

7.

This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§

1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332, 1338, & 1367(a).  The amount in controversy

exceeds $75,000, exclusive of costs and interest.

8.

This Court has *in personam* jurisdiction over Defendants because they are residents of

this District who also conduct business in this District.

## VENUE

9.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

4

## FACTS COMMON TO ALL COUNTS

### 10.

Baskin-Robbins Incorporated is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks.  Baskin-Robbins Incorporated has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

### 11.

Baskin-Robbins USA, Co. has been licensed by Baskin-Robbins Incorporated to grant franchises for the operation of Baskin-Robbins stores within the area in which Defendants' Baskin-Robbins franchise is located.  Baskin-Robbins USA, Co. is authorized to use Baskin-Robbins Incorporated's trademarks, service marks and trade name and to sub-license Baskin-Robbins franchisees to use these marks and trade name.

### 12.

Baskin-Robbins Incorporated owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks.  Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

### 13.

The Baskin-Robbins trademarks are utilized in interstate commerce.

5

14.

The Baskin-Robbins marks have been widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

15.

Baskin-Robbins and its franchisees currently operate more than 2,500 stores in the United States and more than 2,200 stores outside of the United States. In the fifty years since the Baskin-Robbins system was created, millions of consumers have been served in Baskin-Robbins stores.

16.

As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

17.

Maintenance of the highest standards of appearance, product quality, cleanliness, sanitation and customer service is essential to the development and maintenance of the reputation and goodwill of Baskin-Robbins. These standards are important to Baskin-Robbins and to each and every one of its franchisees. Uniformity of appearance, products offered, service, and overall experience by consumers throughout the Baskin-Robbins System is also vital to

develop and protect Baskin-Robbins' goodwill and reputation.

## The Lake Charles Franchise Agreement

### 18.

On or about January 25, 1994, Baskin-Robbins and Defendant Tommy's R.V. Rentals, Inc. entered into a Franchise Agreement under which Baskin-Robbins licensed Tommy's R.V. Rentals, Inc. to operate an ice cream store at 149 W. Prien Lake Road in Lake Charles, Louisiana, utilizing Baskin-Robbins' trade names, trademarks, trade dress, proprietary marks, and the Baskin-Robbins System.

### 19.

Defendant Tommy's R.V. Rentals, Inc. was licensed to use the Baskin-Robbins trademarks, trade names, and trade dress in accordance with the terms of the Lake Charles Franchise Agreement.

### 20.

Defendants Tommy Joyce and Marlene Joyce adopted and agreed to be bound by all the terms and conditions of the Lake Charles Franchise Agreement and personally guaranteed the obligations of Defendant Tommy's R.V. Rentals, Inc. pursuant to an executed Guaranty of Obligations of Corporate Sublease and Corporate Franchisee.

### 21.

The Lake Charles Franchise Agreement contains numerous acknowledgments and agreements by Defendants concerning the importance of maintaining Baskin-Robbins' standards for uniformity, customer service, and product quality.  The applicable paragraphs include:

7

a.  Section 5.2: "In order to promote and protect the value of the Proprietary Names and Marks and the System, including the goodwill and reputation of BASKIN-ROBBINS stores and the business thereof, and the business interests of the parties hereto, and to insure optimum quality control as to the Products and services provided and sold in BASKIN-ROBBINS stores, FRANCHISEE acknowledges and agrees that substantial uniformity must be maintained in the quality, type and standard of BASKIN-ROBBINS stores similar to that franchised hereunder, and in the facilities, Products, services and operations thereof.  Therefore, FRANCHISEE agrees to operate the Store in accordance with the provisions of this Agreement and such other of BASKIN-ROBBINS' reasonable requirements with respect to the operation of BASKIN-ROBBINS stores as may be prescribed to FRANCHISEE from time to time (hereinafter collectively referred to as the "Standards");"

b.  Section 5.6: "FRANCHISEE further acknowledges and agrees that BASKIN-ROBBINS shall have sole control and discretion over the development of the System and the designation of the Products and services to be offered in the Store, and that FRANCHISEE will comply with BASKIN-ROBBINS' requirements in that regard;"

c.  Section 6.1: "FRANCHISEE shall maintain in sufficient supply, and use and/or sell at all times, only such Products and Supplies as meet BASKIN-ROBBINS' standards and specifications (from which FRANCHISEE shall not deviate without BASKIN-ROBBINS' prior written consent) and as are expressly approved for use and/or sale in writing by BASKIN-ROBBINS; FRANCHISEE shall sell or offer for sale all types of Products and services specified by BASKIN-ROBBINS; and shall discontinue selling and offering for sale any Products or services which BASKIN-ROBBINS may, in its sole discretion, disapprove in writing at any time;"

d.  Section 6.3: "FRANCHISEE shall sell, distribute and deliver Products only in such weights, sizes, forms and packages as are approved in writing by BASKIN-ROBBINS from time to time;" and

e.  Section 7.1: "AREA FRANCHISOR agrees to supply to FRANCHISEE, and FRANCHISEE agrees to purchase from AREA FRANCHISOR, all of the Store's requirements for the Products described in Section 1.1.1 as shall be specified by BASKIN-ROBBINS from time to time in the Standards, at AREA FRANCHISOR's wholesale prices at the time of delivery.  Such Products will be of the variety of kinds and flavors which from time to time are selected by BASKIN-ROBBINS for supply to BASKIN-ROBBINS FRANCHISEES . . . .";

8

22.

The Lake Charles Franchise Agreement contains acknowledgments and agreements by

the Defendants concerning the importance of enhancing the goodwill Baskin-Robbins has

created. For example, the applicable paragraphs of the Franchise Agreement include:

a.  Section 5.1: "FRANCHISEE agrees to use its best efforts to enhance the
    goodwill which BASKIN-ROBBINS has created for the Proprietary
    Names and Marks and for the System, including, without limitation,
    operating the Store and promoting the retail sale of Products and services
    in such manner as will further enhance the goodwill of, and customer
    demand for, Products and services."

b.  Section 10.2.1: "FRANCHISEE shall use only the Proprietary Names and
    Marks designated by BASKIN-ROBBINS, and shall use them only in the
    manner expressly authorized and permitted by BASKIN-ROBBINS."

c.  Section 10.2.2: "FRANCHISEE may use the Baskin-Robbins service
    marks for the operation of the Store only at the Premises or in advertising
    for the authorized business conducted at or from the Premises.
    FRANCHISEE may use the Baskin-Robbins trademarks only in
    advertising of the Products described in section 1.1.1."

d.  Section 10.2.5: "Any unauthorized use of the Proprietary Names and
    Marks shall constitute an infringement of BASKIN-ROBBINS' rights and
    an event of default under Section 16.4."

e.  Section 10.3.7: "FRANCHISEE shall not engage in any trade practice or
    other activity which is harmful to the goodwill of, or reflects unfavorably
    on the reputation of BASKIN-ROBBINS, BASKIN-ROBBINS stores, the
    System, the Products, the Proprietary Names and Marks, AREA
    FRANCHISOR or FRANCHISEE, or which constitutes deceptive or
    unfair competition, or which is in violation of any applicable laws."

f.  Section 15.2: "FRANCHISEE acknowledges that, pursuant to this
    Agreement, FRANCHISEE will receive valuable specialized training and
    trade secrets, including, without limitation, confidential information
    regarding the operational, sales, promotional and marketing methods and
    techniques of BASKIN-ROBBINS and the System. FRANCHISEE
    covenants that, except as otherwise approved in writing by BASKIN-

9

ROBBINS, FRANCHISEE shall not, during the term of this Agreement, either directly or indirectly . . . :"

> 15.2.1. "divert or attempt to divert any business or customer of the Store to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Names and Marks or the System";

g. Section 15.8. "FRANCHISEE acknowledges that FRANCHISEE's violation of any of the terms of this Section 15 would result in irreparable injury to BASKIN-ROBBINS for which no adequate remedy at law may be available, and FRANCHISEE accordingly consents to the issuance of an injunction prohibiting any conduct by FRANCHISEE in violation of the terms of this Section 15, without the requirement for the posting of bond, the same being hereby waived by FRANCHISEE."

23.

The Lake Charles Franchise Agreement also contains the following acknowledgments and agreements by Defendants concerning the payment of royalty and advertising fees, and the accurate reporting of gross sales. The applicable provisions include the following:

a. Section 4.1: to pay a continuing monthly royalty fee in an amount equal to one-half percent (.5%) of gross sales.

b. Section 12.1.1: to make a monthly contribution of one and one-half percent (1.5%) of the store's monthly gross sales to the national fund for System and Product advertising.

c. Section 12.2: to make a monthly contribution of two percent (2%) of the store's monthly gross sales to the regional advertising fund.

d. Section 13.1.3: to submit to Baskin-Robbins, on a monthly basis, a gross sales report "reflecting all gross sales during the preceding calendar month.," and, on an annual basis, a balance sheet and profit and loss statement "prepared in accordance with generally accepted accounting principles."

e. Section 13.1.1: to prepare and maintain, and to preserve for at least five (5) years, "full, complete, true and accurate" records and books of account in accordance with generally accepted accounting principles, consistently applied, including,

10

without limitation, original invoices, sales records, sales slips, sales checks, sales reports, all source documents, including, but not limited to, cash register tapes, records of bank deposits, inventories prepared as of the close of the applicable accounting period, income, sales and occupation tax returns, profit and loss statements, general ledger, balance sheet, all other reports made to any governmental taxing and regulatory agencies, all other original records pertaining to the Store, and other pertinent papers and documents which permit a determination of the gross sales of the store.

f.     Section 13.2: to make available for inspection at reasonable times the books, records and tax returns of both the named franchisee as well as any and all persons or entities who are guarantors.

g.     Section 13.2: to pay the cost and expense, including reasonable accounting and legal fees, of (1) any inspection, audit, or reconstruction of the franchise's books and records necessitated by a failure to produce documents adequate to establish gross sales, and/or (2) any inspection, audit or reconstruction that discloses an understatement in any report of gross sales to Baskin-Robbins of two percent (2%) or more.

h.     Sections 13.2 and 4.3: to pay interest on unpaid monies due.

24.

The Lake Charles Franchise Agreement contains acknowledgments and agreements by

the Defendants concerning the effect of breaching the Agreement.  For example, the applicable

paragraphs include:

a.     Section 16.3: "FRANCHISEE shall be deemed to be in default under this Agreement upon the occurrence of any of the following events, and BASKIN-ROBBINS (or AREA FRANCHISOR with the concurrence of BASKIN-ROBBINS) may, at its option, terminate this Agreement and all rights granted FRANCHISEE hereunder, without affording FRANCHISEE any opportunity to cure the default, effective immediately upon written notice from AREA FRANCHISOR;"

b.     Section 16.3.4: "If FRANCHISEE permits the use of the Store or Premises for any illegal or unauthorized purpose, including, without limitation, palming off or substitution of Products under the Proprietary Names and Marks or other marks of BASKIN-ROBBINS;" or

11

c.   Section 16.3.6: "If FRANCHISEE offers for sale or sells unauthorized Products or services from the Store;" or

d.   Section 16.3.8: "If FRANCHISEE fails to comply with the in-term covenants set forth in Section 15;" or

e.   Section 16.3.11: "If FRANCHISEE knowingly maintains false books or records, or knowingly submits any false reports to BASKIN-ROBBINS or to AREA FRANCHISOR."

25.

The Lake Charles Franchise Agreement, at Section 15.3, contains a covenant under which Defendants agreed that for a period of two (2) years following termination or expiration, they would not either directly or indirectly own, maintain, operate, engage in, or have any interest in any business the same or similar to a Baskin-Robbins ice cream store and which is located in the same building or group of buildings where Defendants' Lake Charles Baskin-Robbins store was located.

26.

The Lake Charles Franchise Agreement contains acknowledgments and agreements by Defendants concerning their obligations upon termination or expiration of the Lake Charles Franchise Agreement.  The applicable provisions include the following:

a.   Section 17.1: "Upon expiration or termination of this Agreement, all right of FRANCHISEE to use the Proprietary Names and Marks and the System and to operate the Store within the System or under the Proprietary Names and Marks shall terminate and:"

Section 17.1.2: "FRANCHISEE shall immediately cease to operate the Store, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former FRANCHISEE of BASKIN-ROBBINS;"

12

Section 17.1.3: "FRANCHISEE shall immediately and permanently cease to use, in any manner whatsoever, the System, including, without limitation, methods, procedures and techniques associated therewith, and all Proprietary Names and Marks and distinctive forms, slogans, symbols, and devices associated with the System or the Products. In particular, FRANCHISEE shall cease to use, without limitation, all signs and advertising materials, displays, stationery, forms, and any other articles which display the Proprietary Names and Marks;"

Section 17.1.6: "FRANCHISEE shall immediately sell to AREA FRANCHISOR (who hereby agrees to purchase) all of FRANCHISEE's Products and Supplies bearing the Proprietary Names and Marks, at FRANCHISEE's purchase cost . . . ."

27.

Pursuant to the applicable provisions of the Lake Charles Franchise Agreement, on or about June 16, 2000, Baskin-Robbins sent Defendants a Notice of Default and Termination of Franchise Agreement and Notice of Termination of Ice Cream Deliveries terminating the Lake Charles Franchise Agreement, and demanding that Defendants immediately comply with their post-termination obligations under the Lake Charles Franchise Agreement, including but not limited to ceasing to use Baskin-Robbins' proprietary marks.

28.

Pursuant to the applicable provisions of the Lake Charles Franchise Agreement, on or about August 9, 2000, Baskin-Robbins sent Defendants a Supplemental Notice of Termination and Notice of Expiration of Franchise Agreement terminating the Lake Charles Franchise Agreement and citing the following grounds: (1) failing to maintain accurate records of Gross Sales and other accounting records and supporting documentation, and to report all Gross Sales and pay franchise and advertising fees as required by the relevant provisions of the Lake Charles Franchise Agreement, (2) engaging in conduct injurious or prejudicial to the goodwill associated

13

with Baskin-Robbins' proprietary names, marks, and system, (3) using the Lake Charles store for

an illegal or unauthorized purpose, and (4) engaging in activity violative of applicable tax laws.

In that Notice, Baskin-Robbins further stated that the Franchise Agreement had expired

September 30, 1998, without renewal, that it had continued on a month-to-month basis thereafter,

and that it had effectively terminated with the June 16, 2000 Notice of Default and Termination

of Franchise Agreement and Notice of Termination of Ice Cream Deliveries.

29.

In the August 9, 2000 Supplemental Notice of Default and Termination and Notice of

Expiration of Franchise Agreement terminating the Lake Charles Franchise Agreement, Baskin-

Robbins demanded that Defendants take such actions as necessary to comply with the post-

termination obligations set forth in the Franchise Agreement, including, but not limited to,

immediately ceasing to operate the retail unit, immediately ceasing to use, in any manner

whatsoever, the Baskin-Robbins System and all proprietary names and marks associated with

Baskin-Robbins, its system, or its products, honoring the two-year covenant not to operate the

same or a similar business in the building or group of buildings where the Lake Charles Baskin-

Robbins store was located, and paying Baskin-Robbins, within seven (7) days of the Notice, all

amounts currently owed to it.

30.

On August 4, 2000, a Baskin-Robbins representative inspected the Lake Charles store.

The representative found that Defendants were still operating the Lake Charles store as an ice

cream store, and that they were still selling Baskin-Robbins ice cream.

14

31.

As of October 6, 2000, Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce had overdue accounts receivable for the Lake Charles store owing to Baskin-Robbins in the amount of $13,560.86.

32.

The Lake Charles Franchise Agreement provides that in the event of termination for any default, Defendants shall pay to Baskin-Robbins all damages, costs, and expenses, including attorneys' fees, incurred by Baskin-Robbins  (¶ 17.1.1).  Defendants also agreed to ·· all costs and expenses, including reasonable attorneys' fees, incurred in enforcing the covenants contained in paragraph 15 of the Lake Charles Franchise Agreement.  (¶¶ 15.7, 25.6).  Defendants also agreed that if Baskin-Robbins was the prevailing party in any legal action between the parties, they would pay all of Baskin-Robbins' legal expenses.  (¶ 25.6).

### The Moss Bluff Franchise Agreement

33.

On or about March 8, 1997, Baskin-Robbins and Defendant Tommy's R.V. Rentals, Inc. entered into a Franchise Agreement under which Baskin-Robbins licensed Tommy's R.V. Rentals, Inc. to operate an ice cream store at 112 North Highway 171 in Moss Bluff, Louisiana, utilizing Baskin-Robbins' trade names, trademarks, trade dress, proprietary marks, and the Baskin-Robbins System.

15

e.  Section 13.1.1: to prepare and maintain, and to preserve for at least three (3) years, "full, complete, true and accurate" records and books of account in accordance with generally accepted accounting principles, consistently applied, including, without limitation, original invoices, sales records, sales slips, sales checks, sales reports, all source documents, including, but not limited to, cash register tapes, records of bank deposits, inventories prepared as of the close of the applicable accounting period, income, sales and use tax returns, profit and loss statements, general ledger, balance sheet, all other reports made to any governmental taxing and regulatory agencies, all other original records pertaining to the Store, and other pertinent papers and documents which permit a determination of the gross sales of the store.

f.  Section 13.2: to make available for inspection at reasonable times the books, records and tax returns of both the named franchisee as well as any and all persons or entities who are guarantors.

g.  Section 13.2: to pay the cost and expense, including reasonable accounting and legal fees, of any inspection or audit that discloses an understatement in any report of gross sales to Baskin-Robbins of two percent (2%) or more.

i.  Sections 13.2 and 3.5: to pay interest on unpaid monies due.

37.

The Moss Bluff Franchise Agreement contains acknowledgments and agreements by Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce that they would do nothing injurious or prejudicial to the goodwill associated with the Baskin Robbins proprietary names and marks, and that they would not engage in any illegal activity. The applicable provisions include the following:

a.  Section 15.2: "FRANCHISEE covenants that . . . FRANCHISEE shall not, during the term of this Agreement, either indirectly or directly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, or corporation:

Section 15.2.1: ". . . do or perform, directly or indirectly, any . . . act injurious or prejudicial to the goodwill associated with the Proprietary Names and Marks or the System."

17

Section 17.1.1: "FRANCHISEE shall promptly pay all sums owing to BASKIN-ROBBINS, and its subsidiaries and affiliates.  In the event of termination for any default of FRANCHISEE, such sums shall include all damages, costs, and expenses, including reasonable attorneys' fees, incurred by BASKIN-ROBBINS."

Section 17.1.2: "FRANCHISEE shall immediately cease to operate the Retail Unit, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former FRANCHISEE of BASKIN-ROBBINS;"

Section 17.1.3: "FRANCHISEE shall immediately and permanently cease to use, in any manner whatsoever, the System, including, without limitation, methods, procedures and techniques associated therewith, and all Proprietary Names and Marks and distinctive forms, slogans, symbols, and devices associated with the System or the Products.  In particular, FRANCHISEE shall cease to use, without limitation, all signs and advertising materials, displays, stationery, forms, and any other articles which display the Proprietary Names and Marks;"

Section 17.1.6: "FRANCHISEE shall immediately sell to BASKIN-ROBBINS (which hereby agrees to purchase) all of FRANCHISEE's Products and Supplies bearing the Proprietary Names and Marks, at FRANCHISEE's purchase cost . . . ."

40.

The Moss Bluff Franchise Agreement, at Section 15.3, contains a covenant under which Defendants agreed that for a period of two (2) years following termination or expiration, they would not either directly or indirectly own, maintain, operate, engage in, or have any interest in any business the same or similar to a Baskin-Robbins ice cream store and which is located in the same building or group of buildings where Defendants' Moss Bluff Baskin-Robbins store was located.

19

41.

Pursuant to the applicable provisions of the Moss Bluff Franchise Agreement, on or about

August 9, 2000, Baskin-Robbins sent Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce

a Notice of Default and Termination and Notice of Franchise Expiration terminating the Moss

Bluff Franchise Agreement on the following grounds: (1) failing to maintain accurate

records of Gross Sales and other accounting records and supporting documentation, and to report

all Gross Sales and pay franchise and advertising fees as required by the relevant provisions of

the Moss Bluff Franchise Agreement, (2) engaging in conduct injurious or prejudicial to the

goodwill associated with Baskin-Robbins' proprietary names, marks, and system, (3) using the

Moss Bluff store for an illegal or unauthorized purpose, and (4) engaging in activity violative of

applicable tax laws. In that Notice, Baskin-Robbins further stated that the Moss Bluff Franchise

Agreement had expired by its terms on January 31, 2000 without renewal.

42.

In the August 9, 2000 Notice of Default and Termination and Notice of Franchise

Expiration terminating the Moss Bluff Franchise Agreement, Baskin-Robbins demanded that

Defendants take such actions as necessary to comply with the post-termination obligations set

forth in the Franchise Agreement, including, but not limited to, immediately ceasing to operate

the retail unit, immediately ceasing to use, in any manner whatsoever, the Baskin-Robbins

System and all proprietary names and marks associated with Baskin-Robbins, its system, or its

products, honoring the two-year covenant not to operate the same or a similar business in the

building or group of buildings where the Moss Bluff Baskin-Robbins store was located, and

paying Baskin-Robbins, within seven (7) days of the Notice, all amounts currently owed to it.

43.

As of August 29, 2000, Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce were continuing to use Baskin-Robbins' Proprietary Names and Marks at the Moss Bluff store.

44.

As of October 6, 2000, Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce had overdue accounts receivable for the Moss Bluff store owing to Baskin-Robbins in the amount of $3,519.67.

45.

Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce are continuing to operate an ice cream store at 112 North Highway 171 in Moss Bluff, Louisiana.

46.

The Moss Bluff Franchise Agreement provides that in the event of termination for any default, Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce shall pay to Baskin-Robbins all damages, costs, and expenses, including attorneys' fees, incurred by Baskin-Robbins (¶ 17.1.1). Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce also agreed to pay all costs and expenses, including reasonable attorneys' fees, incurred in enforcing the covenants contained in paragraph 15 of the Moss Bluff Franchise Agreement. (¶¶ 15.7, 25.6). Defendants Tommy's R.V. Rentals, Inc. and Tommy Joyce also agreed that if Baskin-Robbins was the prevailing party in any legal action between the parties, they would pay all of Baskin-Robbins' legal expenses. (¶ 25.6).

## COUNT I: FRAUD -- ALL DEFENDANTS

47.

The allegations of Paragraphs 1 through 46 are hereby incorporated by reference.

48.

At a date unknown but at some time after January 25, 1994, Defendants entered into a scheme to defraud Baskin-Robbins.

49.

It was an object of the scheme to pay Baskin-Robbins less than the actual amount of money due each month as royalty fees and advertising fees.

50.

It was part of the scheme to misrepresent and conceal the actual amount of gross sales made in connection with the franchised businesses.

51.

It was part of the scheme to report gross sales figures to Baskin-Robbins that differed from those actually achieved.

52.

It was part of the scheme to fail to record all sales on the businesses' cash registers or other devices approved by Plaintiff.

53.

It was part of the scheme to prepare fraudulent reports of sales and transmit those reports by mail to Baskin-Robbins headquarters.

22

54.

It was part of the scheme to falsify the businesses' books and records.

55.

It was part of the scheme to fail to keep or to destroy the production and throwaway records indicating products available for sale.

56.

It was part of the scheme to fail to complete and retain proper inventory records.

57.

In furtherance of the scheme, Defendants

a) misrepresented and concealed the actual gross sales of the franchises;

b) reported gross sales figures to Baskin-Robbins that differed from those actually achieved;

c) failed to ring and record all sales on the businesses' cash registers or equivalent devices;

d) prepared and transmitted fraudulent reports to Baskin-Robbins;

e) falsified the businesses' books and records;

f) failed to keep or destroyed the production and throwaway records; and

g) failed to complete and retain proper inventory records.

58.

The total amount of gross sales concealed cannot be stated at this time.

59.

The scheme to defraud entailed the active misrepresentation of material facts, including the amount of gross sales made each month and the amount due as royalty and advertising fees pursuant to the Franchise Agreements.

60.

The scheme to defraud was devised and executed willfully and maliciously, with the specific intent to defraud Baskin-Robbins of the money owed under the Franchise Agreements.

61.

Baskin-Robbins relied upon the misrepresentations and fraudulent omissions of the Defendants, to its detriment and pecuniary loss.

62.

The conduct described above constitutes fraud that cannot be "cured" as a matter of law, and is good cause for terminating the Defendants' Franchise Agreements. This conduct also constitutes intentional underreporting of gross sales and falsification of financial data, for which no cure period is available under Paragraph 16.3.11 of the Lake Charles Franchise Agreement and Paragraph 16.3.11 of the Moss Bluff Franchise Agreement, and is good cause for terminating those Franchise Agreements.

63.

As a direct and proximate result of Defendants' conduct, Baskin-Robbins has incurred substantial losses, fees, and expenses.

24

## COUNT 2: BREACH OF CONTRACT -- ALL DEFENDANTS

64.

The allegations of paragraphs 1 through 63 are hereby incorporated by reference.

65.

The conduct described in paragraphs 48 through 60 herein constitutes breaches of the contractual provisions of the Lake Charles and Moss Bluff Franchise Agreements described in paragraphs 22, 23, 24, 36, 37, and 38.

66.

As a direct and proximate result of these breaches, Baskin-Robbins has incurred substantial losses, fees, and expenses in an amount yet to be determined.

## COUNT 3:  BREACH OF CONTRACT -- LAKE CHARLES STORE

67.

The allegations of paragraphs 1 through 66 are hereby incorporated by reference.

68.

Defendants have offered for sale or sold ice cream and/or other products at the Lake Charles Store that are not approved for use by Baskin-Robbins in its franchised stores.  Such conduct constitutes a material breach of the terms of the Franchise Agreement.

69.

Pursuant to the applicable provisions of the Franchise Agreement, on or about June 16, 2000, Baskin-Robbins sent the Defendants a Notice of Default and Termination of Franchise Agreement and Notice of Termination of Ice Cream Deliveries terminating the Lake Charles Franchise Agreement, and demanding that the Defendants immediately comply with their post-

25

termination obligations under the Lake Charles Franchise Agreement, including, but not limited to, that Defendants cease using Baskin-Robbins' proprietary marks.

70.

Defendants have failed to comply with their post-termination obligations under the Lake Charles Franchise Agreement.

71.

As of October 6, 2000, Defendants have overdue accounts receivable for the Lake Charles store owing to Baskin-Robbins in the amount of $13,560.86.

72.

Defendants are continuing to operate an ice cream store in the same building or group of buildings in which their Baskin-Robbins store was located, in violation of the Lake Charles Franchise Agreement's covenant not to compete.

73.

As a direct and proximate result of Defendants' conduct, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount yet to be determined.

### COUNT 4: BREACH OF CONTRACT -- MOSS BLUFF STORE

74.

The allegations of paragraphs 1 through 73 are hereby incorporated by reference.

75.

Defendants have failed to comply with their post-termination obligations under the Moss Bluff Franchise Agreement.

26

76.

As of October 6, 2000, Defendants have overdue accounts receivable for the Moss Bluff store owing to Baskin-Robbins in the amount of $3,519.67.

77.

Defendants are continuing to operate an ice cream store in the same building or group of buildings in which their Baskin-Robbins store was located, in violation of the Moss Bluff Franchise Agreement's covenant not to compete

78.

As a direct and proximate result of Defendants' conduct, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount yet to be determined.

## COUNT 5:  TRADEMARK INFRINGEMENT -- LAKE CHARLES STORE

79.

The allegations of paragraphs 1 through 78 are hereby incorporated by reference.

80.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name while selling or offering to sell unapproved products, outside the scope of the Lake Charles Franchise Agreement and without the consent of Baskin-Robbins, is likely to confuse or deceive the public into believing, contrary to fact, that the Defendants' unauthorized activities were licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins.  Such

27

continued use of the Baskin-Robbins trademarks and trade name infringed Baskin-Robbins'
exclusive rights

in the Baskin-Robbins trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and the
common law.

81.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name
after the termination of their Franchise Agreement was likely to confuse or deceive the public
into believing, contrary to fact, that the unauthorized activities of Defendants were licensed,
franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins.  Such continued
use of the Baskin-Robbins trademarks and trade name infringed Baskin-Robbins' exclusive
rights

in the Baskin-Robbins trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and the
common law.

82.

Defendants' acts were done knowingly and intentionally to cause confusion, or to cause
mistake, or to deceive.

83.

As a result of the Defendants' infringement of the Baskin-Robbins trademarks and trade
name, Baskin-Robbins has incurred and is likely to incur substantial losses, fees, and expenses,
including irreparable injury to the goodwill associated with the Baskin-Robbins trade name and
trademarks.

28

## COUNT 6:  UNFAIR COMPETITION -- LAKE CHARLES STORE

84.

The allegations of paragraphs 1 through 83 are hereby incorporated by reference.

85.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name while selling or offering to sell unapproved products, outside the scope of the Franchise Agreement and without the consent of Baskin-Robbins, was likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of goods, services or commercial activities.  Such unauthorized use of the Baskin-Robbins trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and the common law.

86.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name after the termination of their Franchise Agreement was likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of goods, services or commercial activities.  Such unauthorized use of the Baskin-Robbins trademark and trade name violated § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and the common law.

87.

Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

29

88.

As a result of the Defendants' unfair competition, Baskin-Robbins has incurred and is likely to incur substantial losses, fees, and expenses, including irreparable injury to the goodwill associated with the Baskin-Robbins trade name and trademarks.

## COUNT 7: TRADEMARK INFRINGEMENT -- MOSS BLUFF STORE

89.

The allegations of paragraphs 1 through 88 are hereby incorporated by reference.

90.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name following their receipt of the August 9, 2000 Notice of Default and Termination and Notice of Franchise Expiration, which is without the consent of Baskin-Robbins, is likely to confuse or deceive the public into believing, contrary to fact, that the Defendants' unauthorized activities are licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins. Such continued use of the Baskin-Robbins trademarks and trade name infringes Baskin-Robbins' exclusive rights in the Baskin-Robbins trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and the common law.

91.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name after the termination of the Moss Bluff Franchise Agreement is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins. Such continued use of the Baskin-Robbins trademarks and trade name infringes Baskin-Robbins' exclusive rights

in the Baskin-Robbins trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and the common law.

92.

Defendants' acts are done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

93.

As a result of the Defendants' infringement of the Baskin-Robbins trademarks and trade name, Baskin-Robbins has incurred and is likely to incur substantial losses, fees, and expenses, including irreparable injury to the goodwill associated with the Baskin-Robbins trade name and trademarks.

## COUNT 8:  UNFAIR COMPETITION -- MOSS BLUFF STORE

94.

The allegations of paragraphs 1 through 93 are hereby incorporated by reference.

95.

The Defendants' use in commerce of the Baskin-Robbins trademarks and trade name following their receipt of the August 9, 2000 Notice of Default and Termination and Notice of Franchise Expiration, which is without the consent of Baskin-Robbins, is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of goods, services or commercial activities.  Such unauthorized use of the Baskin-Robbins trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and the common law.

31

96.

Defendants' acts are done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

97.

As a result of the Defendants' unfair competition, Baskin-Robbins has incurred and is likely to incur substantial losses, fees, and expenses, including irreparable injury to the goodwill associated with the Baskin-Robbins trade name and trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Baskin-Robbins prays that this Court:

a.     Enter a judgment in favor of Baskin-Robbins for the damages incurred by Baskin-Robbins as a result of Defendants' breaches of the Lake Charles and Moss Bluff Franchise Agreements, including, but not limited to, lost royalty fees and unpaid accounts receivable;

b.     Enter judgment in favor of Baskin-Robbins against Defendants for the damages incurred by Baskin-Robbins as a result of Defendants' fraud;

c.     Award Baskin-Robbins exemplary or punitive damages against Defendants because of the wilful, intentional, and malicious nature of Defendants' conduct;

d.     Enter an injunctive order directing Defendants to account to Baskin-Robbins for all sales made and receipts earned during the term of the franchise relationship;

e.     Enter an injunctive order ratifying and enforcing the termination of the Lake Charles and Moss Bluff Franchise Agreements *nunc pro tunc*;

32

f.      Enjoin the Defendants and all those acting in concert with them from infringing upon the Baskin-Robbins trademarks and trade name and from otherwise engaging in unfair competition with Baskin-Robbins;

g.      Enter an injunctive order directing Defendants to comply with the post-termination obligations under the Lake Charles and Moss Bluff Franchise Agreements;

h.      Enter an injunctive order directing Defendants to comply with the covenants not to compete contained in the Lake Charles and Moss Bluff Franchise Agreements;

i.      Enter an injunctive order directing Defendants to file with the Court and serve on Baskin-Robbins within thirty (30) days after service upon Defendants of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

j       Award Baskin-Robbins judgment against Defendants for the damages Baskin-Robbins has sustained and the profits the Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

k.      Award Baskin-Robbins prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

l.      Award Baskin-Robbins its costs and attorneys' fees incurred in connection with this action, pursuant to contract, § 35 of the Lanham Act, 15 U.S.C. § 1117; and

33

m.     Award Baskin-Robbins such other relief as this Court may deem just and proper.

Respectfully submitted,

Edward D. Wegmann (No.13375)
JONES, WALKER, WAECHTER, POITEVENT,
  CARRERE & DENEGRE, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone:    (504) 582-8000
Facsimile:    (504) 582-8011

Robert L. Zisk
Jeffrey L. Karlin
Thomas M. Finan
Roland B. Ninomiya
SCHMELTZER, APTAKER & SHEPARD, P.C.
2600 Virginia Avenue, N.W., Suite 1000
Washington, D.C.  20037
Telephone:    (202) 333-8800
Facsimile:    (202) 625-3311

ATTORNEYS FOR THE PLAINTIFFS
BASKIN-ROBBINS INCORPORATED
AND BASKIN-ROBBINS, USA, CO.

Dated: October 27, 2000



U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
**FILED**

DEC - 6 2000

ROBERT H. SHEMWELL, CLERK
BY_____
DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BASKIN-ROBBINS INCORPORATED, | : | CIVIL ACTION |
| A Delaware Corporation, and | | |
| BASKIN-ROBBINS USA, CO. | : | NO. CV00-1522 LC |
| A California Corporation | | |
| | | |
| Versus | : | JUDGE TRIMBLE |
| | | |
| TOMMY'S R.V. RENTALS, INC. | | |
| A Louisiana Corporation, | : | MAGISTRATE JUDGE WILSON |
| TOMMY JOYCE, and | | |
| MARLENE JOYCE | | |

## ANSWER TO ORIGINAL COMPLAINT AND COUNTERCLAIMS
## AND JURY TRIAL DEMAND

NOW INTO COURT, through undersigned counsel, come Tommy's R.V. Rentals, Inc. and Tommy Joyce and Marlene Joyce, who in answer to the Complaint for Damages and Injunctive Relief, respectfully denies all of the allegations of said complaint except as specifically admitted, and answering said complaint paragraph by paragraph, over as follows:

1.

Defendants are without sufficient information to justify a belief as to the truth of the allegations of Paragraph 1 and therefore those allegations are denied.

2.

The allegations of Paragraph 2 are denied. The franchise agreement is the best evidence of its terms and conditions.

3.

The allegations of Paragraph 3 are denied as written, except that it is admitted that Tommy Joyce and Marlene Joyce are natural persons and citizens of Louisiana. Further answering,



**SCANNED**

Tommy's R.V. Rentals, Inc. is/was a Baskin-Robbins franchisee, and Tommy Joyce and Marlene Joyce were not.   The terms and conditions of any personal guarantees are described in the documents themselves.

4.

The allegations of jurisdiction are denied.

5.

The allegations of Paragraph 5 are denied.

6.

Defendants are without sufficient information to justify a belief as to the allegations of Paragraph 6 and therefore deny them.

7.

Defendants are without sufficient information to justify a belief as to the allegations of Paragraph 7 and therefore deny them.

8.

Defendants are without sufficient information to justify a belief as to the allegations of Paragraph 8 and therefore deny them.

9.

Defendants are without sufficient information to justify a belief as to the allegations of Paragraph 9 and therefore deny them.

10.

Defendants are without sufficient information to justify a belief as to the allegations of Paragraph 10 and therefore deny them.

G:\VCS\word\joyce, tommy\answer to complaint from baskin 2.doc

11.

Defendants are without sufficient information to justify a belief as to the allegations of Paragraph 11 and therefore deny them.

12.

Defendants are without sufficient information to justify a belief as to the allegations of Paragraph 12 and therefore deny them.

13.

Defendants are without sufficient information to justify a belief as to the allegations of Paragraph 13 and therefore deny them.

14.

The allegations of Paragraph 14 are denied. The franchise agreement is the best evidence of its terms and conditions.

15.

The allegations of Paragraph 15 are denied. The franchise agreement is the best evidence of its terms and conditions.

16.

The allegations of Paragraph 16 are denied. The franchise agreement is the best evidence of its terms and conditions.

17.

The allegations of Paragraph 17 are denied. The franchise agreement is the best evidence of its terms and conditions.

18.

The allegations of Paragraph 18 are denied.  The franchise agreement is the best evidence of its terms and conditions.

19.

The allegations in Paragraph 19 are denied.

20.

The allegations of Paragraph 20 are denied.

21.

The allegations of Paragraph 21 are denied, to the extent an answer is required.

22.

The allegations of Paragraph 22 are denied.

23.

The allegations of Paragraph 23 are denied.

24.

The allegations of Paragraph 24 are denied.

25.

The allegations of Paragraph 25 are denied.

26.

The allegations of Paragraph 26 are denied to the extent an answer is required.

27.

The allegations of Paragraph 27 are denied.

28.

The allegations of Paragraph 28 are denied.

29.

The allegations of Paragraph 29 are denied.

30.

The allegations of Paragraph 30 are denied.

31.

The allegations of Paragraph 31 are denied, to the extent an answer is deemed required.

32.

The allegations of Paragraph 32 are denied.

33.

The allegations of Paragraph 33 are denied.

34.

The allegations of Paragraph 34 are denied.

35.

The allegations of Paragraph 35 are denied.

AND NOW, in further answer to the said complaint, it is respectfully pled as follows:

36.

The Complaint, whole or in part, fails to state a claim upon which relief may be granted.

37.

Plaintiffs' claims are barred by the doctrine of estoppel.

38.

Plaintiffs' claims are barred by the doctrine of laches.

39.

Plaintiffs' claims are barred due to fraud by the Plaintiffs.

40.

Defendants will show that at the time of the filing of the Original Complaint, there was pending in the U.S. District Court for the Eastern District of Texas, Texarkana Division, a matter styled *Larry Brock, Kathy Brock, Everett Brock Ent., Inc., Betty Clarke, Blair Clarke, Darlene Gentry, William Gentry, Kathy Gortney, Guy Gortney, Alice Higgins, William Higgins, Mike Higgins, Ent., Inc., Duke Hood, Michael Collins, Homer Hodge, C&H Inc., Nancy Horkey, Luche, Inc., Linda Hulsey, Harry Hulsey, Marlene Joyce, Tommy Joyce, Store's Tommy's R.V. Rentals, Inc., Patsy Merrill, Gerald Merrill, PTK, Inc., Tifken Corp, Flavio Olivarez, Madhre Patel, Naran Patel, Kathy Plunkett, Charles Plunkett, Neil Ponthie, Par-Group, Inc., Billy Dan Rolling, Susan Schneider, Ed Schneider, Mohinder Ahluwalia, Dabir Ahluwalia, David C. Sturgeon, Paula J. Wolslager, San Angelo Ice Cream & Yogurt, Inc., San Angelo Ice Cream & Yogurt No. 2, Inc., Thelda Taylor, Glen Taylor, Taylor Hobbs, C. Terry Hobbs, Ice Cream Services of Texas, LLC, Tommy Thomas, Jr., Wilson B. Harris, Elizabeth Harris, James D. Daniels, Caron Daniels, Dan Cross Eat, Inc., James G. Daniels, Daniels Ice Cream, Inc., Corey Johnson, VIcki Johnson, Jimmy Chen, Ping-Pong Wang, Donald Gay, Elabeth Gay, William Jollit, Patricia Jollit, B & S Ventures, Randy Mazer, Scott Reneau, Donna Reneau, Jim Gaston, Vickie Gaston, Samuel Mundi, Munci, Inc., Addie Hall, Carolyn Joiner, Joseph Emerson, and Linda Emerson, Plaintiffs v. Baskin-Robbins USA Co., and Baskin Robbins Incorporated,* Defendants, Case No. 5:99CV274, wherein Plaintiffs' claims are a compulsory counterclaim. Consequently, Plaintiffs' cause of action should be transferred to that venue pursuant to 28 U.S.C. §1404(a), and upon said transfer consolidated with said cause under Rule 42, or in the alternative,

Plaintiffs' cause should be stayed pending disposition of the matters presented to the Court in that action.

41.

Defendants will show that Plaintiffs have breached the franchise agreements which form the contractual relationship between Defendants and Plaintiffs. Said breach of the franchise agreements has resulted in substantial damages to Defendants for which they are entitled to offsets and credits against any sums due Plaintiffs. In fact, Defendants' offsets and credits will exceed any sums due Plaintiffs. Consequently, Defendants are entitled to recover his reasonable attorney's fees not only for the defense of this matter, but also for the preparation and prosecution of his claim for offsets and credits.

42.

Defendants will further show that Plaintiffs are not entitled to the temporary relief sought herein for the reason that prior to initiating this litigation, Plaintiffs made demand upon Defendants and in said demand letters made the following statements.

"You are advised that if you contest the claimed defaults and contend that termination is not justified, BR will not enforce this termination by itself. Instead, it will immediately submit the matter to a Court of competent jurisdiction to determine which party is correct and will seek judicial enforcement of and your post-termination obligations, as well as damages, recovery of the franchised location, attorneys fees, costs and interest. If it should be determined that there is no good cause for termination of the Franchise Agreement, then BR will consider this notice to be void and the relationship will continue as before.

"During the time between the date of this Notice and any judicial determination, BR and its subsidiaries will continue to honor their obligations under the Franchise Agreement and any other agreements as if those obligations were still in effect. This interim arrangement is intended solely to create a framework for preserving rights while the issues are being decided by the Court and shall not, in any way, be considered a waiver of BR's claims or its position that the termination is valid and enforceable.

"As the party opposing termination and maintaining that an enforceable franchise relationship still exists, you are expected to honor all obligations under the Franchise Agreement and any other agreements regarding the operation of the franchised business to which you are a party.  You continue to be obligated for all amounts already due, or that will become due, by virtue of your continued operation of the franchised business.  Any and all amounts paid by you, or to be paid by you, while operating during this period may be accepted by BR without waiver of its rights and claims, including the right to terminate the Franchise Agreement or seek injunctive relief.

## COUNTERCLAIMS

AND NOW, assuming the role of Counter-Plaintiffs, Tommy's R.V. Rentals, Inc. and Tommy Joyce and Marlene Joyce (hereinafter sometimes referred to jointly as ("Counter-Plaintiffs"), in order to assert counter claims against Plaintiffs, Baskin Robbins, Incorporated, and Baskin Robbins USA Co. ( hereinafter sometimes referred to jointly as "Counter-Defendants") respectfully plead as follows:

43.

Counter-Plaintiffs and Counter-Defendants are before this Court as a result of the respective pleadings on file herein.  Jurisdiction is founded on diversity of citizenship and amount, 28 U.S.C. Sec. 1332, as plaintiffs are citizens of the States of Texas, Louisiana, Mississippi, and New Mexico, defendants are citizens of the States of California, Delaware and Massachusetts, and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy Five Thousand Dollars. This Court also has federal question jurisdiction pursuant to 28 U.S.C. Sec. 1331 and 15 U.S.C. Sec. 13(a). Venue is proper in this division and this district under 28 U.S.C. Sec. 1391(a) and 28 U.S.C. Sec. 1391(c) for the reason that Defendants are doing business in this division and this district. Further, venue is proper in this division and this district under 28 U.S.C. Sec. 1391(b) and (c) for the reason that Baskin-Robbins is doing business in this

division and this district. Plaintiffs will further show that the Plaintiffs who have executed franchise agreements containing forum selection clauses did so under economic duress, coercion, and as a result of fraud and other tortious conduct by Defendants, and in violation of Federal requirements governing execution of franchise agreements. Consequently, said provisions of said franchise agreements should be determined by this Court to be unenforceable.

44.

Counter-Plaintiffs are franchisees of Baskin-Robbins franchises.

45.

The Counter-Plaintiffs bring this action seeking both remedies at law and equitable relief.

46.

The Counter-Plaintiffs own and operate "single brand" Baskin-Robbins franchise locations in Louisiana. "Single brand" franchise locations are franchise locations which sell only Baskin-Robbins brand products.

47.

Counter-Plaintiffs reside and do business in Calcasieu Parish, Louisiana. Baskin-Robbins USA Incorporated is a corporation organized under the laws of the State of California with its principal place of business in the State of Massachusetts.

48.

BR Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Massachusetts.

49.

BR USA is a franchisor and the manufacturer and distributor of ice cream, frozen yogurt and other frozen desert products. It distributes its products in at least forty (40) of the United States.

50.

BR USA is a wholly owned subsidiary of BASKIN Robbins Incorporated.

51.

BR Inc. grants area franchises for the manufacture and sale of its products and ha granted the right to BASKIN ROBBINS USA CO. to franchise retail stores. In its fiscal year ending August 31, 1996, BASKIN Robbins Incorporated, and its subsidiaries, had total revenues of $270.3 million of which $216.3 million, representing 80%, was derived from the sale of ice cream and ice cream products.

## III.    GENERAL FACTUAL BACKGROUND

52.

The franchise agreements between Counter-Plaintiffs and Baskin-Robbins involve the sale of goods in interstate commerce.

53.

The franchise agreements between Counter-Plaintiffs and Baskin-Robbins include non-competition provisions.

54.

At all times material hereto, the Counter-Plaintiffs owned and operated single-brand Baskin-Robbins Franchise locations in the State of Louisiana, as consumers under the Louisiana Unfair Trade and Consumer Protection Statute, purchasing ice cream products and related services and products during the time up to and around October 26, 1999 and October 27, 1999, and were owed a fiduciary duty until October 26 and October 27, 1999.

55.

The Counter-Plaintiffs owned and operated the franchise locations referred in the preceding paragraphs as a result of entering into franchise agreements with BASKIN ROBBINS USA CO. and/or BASKIN Robbins Incorporated

56.

On or around October 26, 1999 and October 27, 1999 BASKIN ROBBINS USA CO. and/or BASKIN Robbins Incorporated representatives, including Connie Burkhart, gave written and verbal notice to the Counter-Plaintiffs that BASKIN ROBBINS USA CO. and/or BASKIN Robbins Incorporated would not be renewing their franchise agreement on the basis that their franchise location was located in a "non-strategic market."

57.

While BASKIN ROBBINS USA CO. and/or BASKIN Robbins Incorporated did not advise the Counter-Plaintiffs of the non-renewal described in the preceding paragraph until or around October 26, 1999 and/or October 27, 1999, representatives of the Counter-Defendants, including Connie Burkhart, knowingly withheld this information from the Counter-Plaintiffs for a time period of at least several months prior to disclosing the information regarding the non-renewal of franchise locations, this information being material to the Counter-Plaintiffs' decision to purchase any product, as consumers, and otherwise, from BASKIN ROBBINS USA CO.

58.

In furtherance of withholding this material information from the Counter-Plaintiffs, representatives of BASKIN ROBBINS USA CO. and/or BASKIN Robbins Incorporated, including Connie Burkhart, executed a confidentiality agreement which prohibited any disclosure to the Counter-Plaintiffs, and others, prior to the date of or around October 26, 1999 and/or October 27, 1999, of the material fact and information that their franchise locations would not be

renewed due to the defendants' determination that the Counter-Plaintiffs' franchise locations were located in a "non-strategic area."

59.

Upon information and belief, representatives of BASKIN ROBBINS USA CO. and BASKIN Robbins Incorporated, including Connie Burkhart, executed the confidentiality agreement referred to in the preceding paragraph, in Las Vegas, Nevada, several months prior to disclosing to the Counter-Plaintiffs that their franchise locations would not be renewed by BASKIN ROBBINS USA CO.

60.

During the time period between the execution of the confidentiality agreement referred in the preceding paragraphs, and the date the Counter-Defendants' representative gave notice of the non-renewal of the franchise locations, as described in the preceding paragraphs, BASKIN ROBBINS USA CO. and/or BASKIN Robbins Incorporated continued the unconscionable practices of selling ice cream products and other related services and products to the Counter-Plaintiffs, and securing other material rights and remuneration from the Counter-Plaintiffs, absent their knowledge of the Counter-Defendants' decision regarding the non-renewal of their franchise locations, and to the detriment of the Counter-Plaintiffs individually.

61.

Upon information and belief, it is further alleged that the representatives of BASKIN ROBBINS USA CO. and BASKIN Robbins Incorporated who were involved in the withholding of the information regarding non-renewal of the Counter-Plaintiffs, more specifically Connie Burkhart, were so affected by this unconscionable action and conduct that the Counter-Defendants provided counseling and management to assist the same after the disclosure of the Counter-Defendants' decision to not renew the franchise locations of the Counter-Plaintiffs.

62.

At all times material hereto, BASKIN ROBBINS USA CO. offered three basic types of franchise units that could be acquired by prospective franchisees. First, BASKIN ROBBINS USA CO. sold franchises for "Basic Retail Units" which were units located near other retail operations such as in a strip center or shopping mall. Next, BASKIN ROBBINS USA CO. offered "Drive-thru Retail Units" which were standalone facilities with drive-thru capabilities. Lastly, BASKIN ROBBINS USA CO. offered "Combo Retail Units" which were retail stores offering a combination of food products such as ice cream combined with donuts and/or sub sandwiches and/or other food products. These units were known as "combo brand" stores. "Single brand" stores are all stores which are not combo brand stores and do not offer a combination of food products such as ice cream combined with donuts and/or sub sandwiches and/or other food products.

63.

Sometime during the time period of January 1, 1994 and May 8, 1997, the Counter Defendants, acting in conjunction with Dunkin, concluded that the combo brand store, selling other food products in addition to frozen deserts, was a superior business model, as compared to single brand stores. In furtherance of this conclusion the defendants issued and developed a document entitled "The Chicago Plan" which contained facts and information, which had they disclosed, would have been material to Counter-Plaintiffs' decision to execute franchise agreements for and invest in the operation of single brand stores.

64.

The Chicago Plan was a strategic plan, for the time period of 1997 to 2000 which evidences and is based upon the Counter-Defendants' conclusion that the single brand store was obsolete and not viable, thereby requiring the overwhelming development of the combo store, while phasing out the single brand stores. Among the elements contained in The Chicago Plan, which was part of a national strategy, was the following:

G:\VCS\word\joyce, tommy\answer to complaint from baskin 2.doc

- "Only corporately sign combo deals or potentially dual branded locations."

- For the time period 1998 to 2000 develop combo stores at rate approximately twelve (12) combo stores for one (1) single brand store.

- Close all "C" locations at the end of the franchise term.


65.

In furtherance of the Counter-Defendants' strategy for phasing out the single brand franchise locations, the defendants engaged in a concerted effort altering the rating systems of franchise stores, whereby store ratings would drop from a higher rating category to a "C" rating, as described in the aforementioned "Chicago Plan."

66.

During or around the time period of January 1, 1994 through May 8, 1997, although the Counter-Defendants had concluded that the combo brand store was the superior business model, and one which offered the greatest probability for profitable operations, Counter-Defendants continued to sell franchises for single brand stores in Texas and across the United States. In effectuating these sales, whether on an initial purchase of a franchise location or the renewal of a existing franchise location, to the Counter-Plaintiffs, the Counter-Defendants and their directors, officers, executives and other personnel withheld, omitted and misrepresented material facts to the Counter-Plaintiffs prior to the decision of the Counter-Plaintiffs to execute franchise and/or renewal agreements for the operation of single brand stores.

67.

The central devices used by the defendants in the withholding, omitting, and misrepresenting of information material to the Counter-Plaintiffs' decision to execute franchise agreements for the operation of single brand stores were BASKIN ROBBINS USA CO.'s Uniform Franchise Offering Circulars (UFOC), such as one dated May 13, 1994. This device, or one similar, was distributed to the Counter-Plaintiffs and contained no material variation in the

withholdings, omissions, and misrepresentations of information material to the Counter-Plaintiffs' decisions to execute franchise agreements for the operation of single brand stores.

68.

The UFOCs dated May 13, 1994, or similar thereto were justifiably relied upon by the Counter-Plaintiffs. These UFOCs withheld, omitted, and misrepresented information material to the Counter-Plaintiffs' decision to execute franchise agreements with the Counter-Defendants for the operation of single brand franchise stores, most notably, the Counter-Defendants' conclusion that single brand stores were outmoded and obsolescent.

69.

The withholding, omission, and misrepresentation of certain material facts by the Counter-Defendants was justifiably relied upon by the Counter-Plaintiffs and fraudulently induced the same into investing capital and other resources into the operation of the single brand stores after the execution of franchise agreements for the operation of the single brand stores.

70.

In effectuating sales of the single brand franchise locations the Counter-Defendants withheld, omitted, or misrepresented facts which were material to the Counter-Plaintiffs' decision to execute franchise agreements for the operation of single brand franchise stores and their decision to invest capital and other resources into the operation of single brand stores. Though the Counter-Defendants were under a duty to disclose material facts relevant to the Counter-Plaintiffs' decision to execute franchise agreements for the operation of single brand stores, they did not, those material facts including, but not limited to, the following:

a) That the directors, officers, executives and other personnel of the Counter-Defendants concluded that the combo brand store was to be developed at an overwhelming pace, as compared to the single brand store;

b) That the directors, officers, executives and other personnel of the Counter-Defendants concluded that the single brand store was obsolete and not viable;

c) That the directors, officers, executives and other personnel of the Counter-Defendants concluded that combo brand stores were more profitable than the single brand stores.

In addition to aforementioned withheld, omitted, or the misrepresented material facts in the  proceeding paragraph, the Counter-Defendants' president, Tony Gioia, in a videotape promulgated by the Counter-Defendants in 1996, stated the following:a) "I fundamentally believe that our retail experience is not competitive anymore especially in southern California but throughout the country;"

b) "We also started a new media strategy focusing more of our resources on those key markets;"

c) That the Baskin Robbins Business Transformation (BRBT) was commenced in 1994 and that "we didn't have the name BRBT with it but we had the same vision two years ago which was about fundamentally changing the offering to your customers, to our consumers and also changing the offering to you to make the business much more exciting for all of us;"

d) Baskin Robbins is "transforming the retail asset base";

e) "BRBT strategy will once and for all fundamentally transform the business offering" of Baskin Robbins and that the focus of the BRBT strategy was the development of "multiple brand" franchise locations.

### 71.

BASKIN Robbins Incorporated and BASKIN ROBBINS USA CO. shared the same officers, executives, and personnel, during the time period of January 1, 1994 through May 8, 1997, including, but not limited to, Mr. Kenton C. Woods and Maria Flores. Mr. Woods was Vice-President of Finance for BASKIN Robbins Incorporated and BASKIN ROBBINS USA CO. and Ms. Flores was Vice President of Human Resources for BASKIN ROBBINS USA CO. and BASKIN Robbins Incorporated.

72.

At some point between January 1, 1994 and May 8, 1997 the Counter-Plaintiffs entered into agreements for the initial purchase or renewal of single brand franchise locations after having justifiably relied on the information contained in the defendants' UFOCs.

73.

Subsequent to May 9, 1997 the Counter-Defendants disseminated a UFOC dated May 9, 1997. It was in the May 9, 1997 UFOC that the Counter-Defendants finally disclosed the extent of development of the combo store and he advantages of the same, this information being withheld from the Counter-Plaintiffs prior to the distribution of the May 9, 1997 UFOC by the Counter-Defendants.

74.

On or around October 26, 1999 and October 27, 1999 the representatives of the Counter-Defendants, including Connie Burkhart, disclosed to the Counter-Plaintiffs, having owned and operated their single brand stores and having invested large amounts of capital and resources in the same, that their single brand store franchise agreements would not be renewed.

75.

Counter-Plaintiffs entered into agreements with various buyers for the sale of their respective existing single brand franchise locations.

76.

At some point in time after the agreements referenced in the preceding paragraph were reached, representatives of the Counter-Defendants contacted the contracted buyers or the single brand franchise locations, advising the same that the franchises were located in non-strategic markets and/or were "C" locations and/or Counter-Defendants took action which was so adverse to Counter-Plaintiffs that it became impossible to sell their respective existing single brand franchise locations. The Counter-Defendants contact with

the parties under contractual obligations with the Counter-Plaintiffs was done in such a manner that it undermined and interfered with the contractual relationship between the Counter-Plaintiffs and the aforementioned parties and individuals. In contacting the individuals and parties that the Counter-Plaintiffs had contractual relations with, the defendants interfered in these contractual relations by advising these third parties and individuals that the Counter-Plaintiffs franchise locations were located in non-strategic markets and/or were "C" rated locations.

77.

Subsequent to the Counter-Defendants' conduct described in the preceding paragraph, the contracted buyers refused to complete the purchase of the Counter-Plaintiffs' single brand franchise locations and/or refused to fulfill any and all contractual obligations relating to the purchase of the Counter-Plaintiffs single brand franchise locations.

78.

On November 18, 1999, Baskin-Robbins sent certain franchisees a letter, stating their franchises were located in markets designated as "non-strategic" and extending two offers to franchisees: a document entitled "Franchise Royalty Conversion Offer" and a document entitled "Limited Franchise Royalty Conversion Offer."

79.

Both the Franchise Royalty Conversion Offer and the Limited Franchise Royalty Conversion Offer included a "GENERAL RELEASE" under which the franchisee was required to release and forever discharge Baskin-Robbins Incorporated and Baskin-Robbins USA Co., their successors, assigns, subsidiaries, and affiliated corporations ... and all officers, directors, agents, employees and representatives past and present, of Baskin-Robbins or any one of them, of and from any and all claims, demands, causes of action, suits, debts, dues, duties, sums of money, accounts, reckonings,

covenants, contracts, agreements, promises, damages, judgments, extents, executions, liabilities, and obligations, both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state or federal law, against Baskin-Robbins which you or your predecessor in interest ever had, now have, or which they, their heirs, executors, administrators, or assigns hereafter can, shall, or may have, for, upon, or by reason of any matter, cause or thing whatsoever, to the date of this amendment.

80.

Both the Franchise Royalty Conversion Offer and the Limited Franchise Royalty Conversion Offer included a wholesale price reduction on ice cream products to those franchisees who selected one of the offers.

81.

This wholesale price reduction was not available to franchisees who opted not to accept either offer.

82.

This stated purpose of the wholesale price reduction is "intended to provide the consumer with lower retail prices, an improved experience and a more relevant product offering" and to provide the franchisee with "better unit economics, lower wholesale prices, and increased traffic driven by lower prices and an improved store experience."

83.

The Limited Franchise Royalty Conversion Offer contained a "DEIDENTIFICATION" provision whereby Baskin-Bobbins agreed to waive its right to enforce the non-competition provision of the franchise agreements, permitting the franchisee to continue to operate an ice cream or yogurt store at the same location after termination of the franchise agreement provided the franchisee did not use any Baskin Robbins products, trade names, ortrademarks. The Franchise Royalty Conversion Offer

permitted renewal of franchises with "C" site or trade area ratings provided the franchisee relocated its store in accordance with standards set forth in the Offer.

84.

The offers by Baskin-Robbins threaten to enforce the non-competition provision against any franchisee operating a store in a non-strategic area who fails to accept either the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer.

85.

Although the aforementioned execution or failure to execute the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer proposed material changes to the existing franchise agreements of the Counter-Plaintiffs, the Counter-Defendants, in further evidence of their unconscionable conduct towards the Counter-Plaintiffs, failed to comply with the requirements of 16 CFR 436, which mandates the dissemination of a UFOC to an existing franchisee if material changes are proposed to an existing franchise agreement.

## IV.   BASKIN ROBBINS AS TRUSTEE OF THE BASKIN ROBBINS ADVERTISING TRUST FUND

86.

Baskin Robbins maintains and administers the Baskin Robbins System and Product Advertising Trust Fund as trustee.

87.

The Baskin Robbins System and Product Advertising Trust Fund was established in 1985 in order to provide marketing and promotional support to all Baskin Robbins franchise locations within the Baskin Robbins system. Id.

88.

As trustee, Baskin Robbins administers the Baskin Robbins System and Product Advertising Trust Fund for the benefit of the franchisees, who contribute percentages of their gross sales to fund the Baskin Robbins System and Product Advertising Trust Fund.

89.

The Baskin Robbins System and Product Advertising Trust Fund is not an asset of Baskin Robbins. As such, separate independent auditors reports are, and were, prepared for the Baskin Robbins System and Product Advertising Trust Fund.

90.

Effective January 1, 1997, the Baskin Robbins System and Product Advertising Trust Fund began to account for regional advertising funds, which were previously held by Baskin Robbins. The Counter-Plaintiffs, as franchisees, were, and are, required to contribute percentages of their gross sales to the aforementioned regional advertising fund. As a result of the consolidation of the national advertising fund and the regional advertising fund, all contributions made by the franchisees for regional and national advertising are held in trust by Baskin Robbins, with Baskin Robbins acting in the capacity of trustee. At some point in time prior to January 1, 1997, the Counter-Defendants made a conscious decision to change the scope of media coverage for the National Advertising Trust Fund to a regional scope. This decision affected smaller market franchise locations, such as the ones owned by the Counter-Plaintiffs, to their detriment.

91.

In altering the scope of media coverage for the Baskin Robbins Franchise System, the Counter-Defendants categorized franchisees into three groups, those being as follows:

      a) Tier I franchises;

      b) Tier II franchises; and

c) Tier III franchises.

The grouping of franchises within the Tier system was based on the size of the DMA in which the franchise was located, larger DMAS being grouped in Tier I, while smaller market franchise locations were grouped in Tiers II and Tiers III. The defendants define a "DMA" as a designated media area. The Counter-Plaintiffs in this action are franchised locations that are considered to be Tier II or Tier III franchise locations under the Counter-Defendants' advertising system.

92.

The Counter-Defendants' decision to change the scope of the National Advertising Trust fund to one that is regional severely impacted the Counter-Plaintiffs ability to benefit from national promotional and advertising campaigns on the basis that the new regionally focused advertising system benefitted larger regional markets, which were within the Tier I category of the Baskin Robbins advertising system, at the expense of Tier II and Tier III franchise locations.

93.

On October 20, 1997, a Baskin Robbins internal memorandum depicted the detrimental impact of the new scope of the national advertising trust fund, in conjunction with the Tier category system, stating as follows:

**as anticipated**, after implementing the new media strategy in FY'97, same store sales do show a definite gap between the tiers, with **media rich Tier 1 markets** showing an overall 5.1 % increase.

94.

The Counter-Defendants' Tier marketing system required that the Tier 1 markets received the bulk of the funds contained within the Baskin Robbins System Adverting Trust Fund, at the expense of the franchise locations located in Tier II and Tier III

markets. As further evidence of the Counter-Defendants unconscionable conduct towards the Counter-Plaintiffs in this action, the detrimental impact was "anticipated" by the Counter-Defendants relative to the Counter-Plaintiffs in this action, who are franchisees located in Tier II and Tier III markets. The "anticipated" detrimental impact described above, in paragraphs 55 through 58, was withheld from the Counter-Plaintiffs. Furthermore, the Counter-Defendants took affirmative steps to promulgate materials, including a video tape in which Don Skeoch of Baskin Robbins appeared, which withheld, omitted and misrepresented the material facts regarding the detrimental impact of the defendants Tier advertising system on the Counter-Plaintiffs.

95.

In addition to the above, as further evidence of the Counter-Defendants unconscionable conduct towards the Counter-Plaintiffs, Darrell Fleck, an executive with the Counter-Defendants, made several statements regarding the Counter-Defendants' decision to close the franchise locations of the Counter-Plaintiffs. Among the statements made by Darrell Fleck was his comparison of Counter-Defendants' decision to close the Counter-Plaintiffs franchise locations to that of 1) severing a cancerous limb to save the body and 2) trimming the dead branches from a tree in order to preserve the life of a tree.

### V.    COUNT ONE Unfair or deceptive acts or practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Act

96.

Counter-Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten.

97.

The Counter-Defendants withheld material information regarding their intent to renew the franchises of the Counter-Plaintiffs despite their awareness of the falsity, deception, and unfairness inherent in their conduct.

98.

The Counter-Defendants' withholding of material information regarding their intent not to renew the franchises of the Counter-Plaintiffs constituted unfair and deceptive conduct of trade or commerce within the meaning of the Louisiana Unfair Trade Practices and Consumer Protection Act.

99.

By reason of the conduct as aforesaid, the Counter-Plaintiffs each suffered actual damages in an amount in excess of $75,000.00.

## VI.   COUNT TWO

### Fraud

100.

Counter-Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten herein.

101.

By using means and instrumentalities of interstate commerce, the Counter-Defendants knowingly and/or recklessly (a) employed devices, schemes, and artifices to defraud the Counter-Plaintiffs in connection with their purchase of ice cream products prior to or around October 26, 1999 and October 27, 1999, even though the Counter-Defendants were under a duty to disclose the material information that the franchise locations of the Counter-Plaintiffs would not be renewed, as described with particularity in the preceding Paragraphs of this Complaint.64.   The Counter-Defendants were under a duty to disclose these facts because of their materiality to the Counter-Plaintiffs' decision to purchase ice cream products and related products and services from the defendants by reason of the Counter-Defendants' superior knowledge, skill, bargaining power and course of dealing among the parties.

102.

The Counter-Defendants' failure to disclose, and their omissions, withholdings, and misrepresentations of the material facts previously referenced and described in the preceding paragraphs, while under a duty to do so, in light of the circumstances, constituted a fraud or deceit upon the Counter-Plaintiffs.

103.

The Counter-Plaintiffs justifiably relied on the information available to them to their detriment at the time they purchased ice cream products and related products and services from the Counter-Defendants, as described in the preceding paragraphs.

104.

By reason of the conduct of the Counter-Defendants, the Counter-Plaintiffs have each suffered losses in the operation of their single brand stores and been injured by reason of the conduct of Counter-Defendants in an amount to be proved at trial, but in excess of $75,000.

## VII.   COUNT THREE

### Breach of Implied Covenant of Good Faith and Fair Dealing

105.

Counter-Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten.

106.

The Counter-Defendants' withholding of material information regarding their intent not to renew the franchises of the Counter-Plaintiffs from the Counter-Plaintiffs while continuing to sell ice cream and related products and services to the Counter-

Plaintiffs and securing other remuneration from the Counter-Plaintiffs constituted a breach of the implied covenant of good faith and fair dealings implied in all contracts.

107.

By reason of the Counter-Defendants' breach of the implied covenant of good faith and fair dealing, the Counter-Plaintiffs each suffered damages in an amount to be proved at trial but in excess of $75,000.00.

## VIII.   COUNT FOUR

### For Injunction Against Enforcement of the Non-Compete Provisions of the Baskin-Robbins Franchise Agreement

108.

Counter-Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten.

109.

Having designated the areas in which the Counter-Plaintiffs' franchises are located as "non-strategic," the Counter-Defendants will not be conducting business in those areas in the future.

110.

Having designated the areas in which the Counter-Plaintiffs' franchises are located as "non-strategic," the Counter-Plaintiffs will not be competing with the Counter-Defendants by continuing to operate ice cream stores in the same location after expiration of their franchise agreements.

111.

The Counter-Defendants' designation of the areas in which the Counter-Plaintiffs' franchises are located as "non-strategic" frustrates the purpose of the non-compete provision in the Baskin-Robbins franchise agreements.

112.

In light of the Counter-Defendants' designation of the areas in which the Counter-Plaintiffs' franchises are located as "non-strategic," the non-competition provision is no longer reasonable or rationally related to the Counter-Defendants' interests.

113.

In light of the Counter-Defendants' designation of the areas in which the Counter-Plaintiffs' franchises are located as "non-strategic," enforcement of the non-competition provision of the Baskin-Robbins franchise agreements is unreasonable, unconscionable, and against public policy.

114.

The Counter-Plaintiffs have no adequate remedy at law.

115.

By reason of the Counter-Defendants' designation of the areas in which the Counter-Plaintiffs' franchises are located as "non-strategic," the Counter-Plaintiffs are entitled to an injunction prohibiting the Counter-Defendants from enforcing the non-competition provisions in the franchise agreements.

## IX.    COUNT FIVE

### Breach of the Fiduciary Duty and Obligations

116.

Counter-Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this complaint, as if fully rewritten herein.

117.

The Counter-Defendants' actions and conduct in the administration of the Baskin Robbins System Advertising Trust Fund, in their capacity as trustee of this trust fund, breached any and all fiduciary duties and obligations owed to Counter-Plaintiffs in this action. By reason of the Counter-Defendants breach of said fiduciary duties and obligations, the Counter-Plaintiffs each suffered damages in an amount to be determined at trial but in an excess of $75,000.00.

## X.   COUNT SIX

### Conversion

118.

Counter-Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten herein.

119.

Counter-Plaintiffs will show that under the various franchise agreements referenced herein, they were required to submit to Counter-Defendants fees to be used for advertising for the benefit of Counter-Plaintiffs' franchisees. On information and belief, Counter-Plaintiffs contend and will show that Counter-Defendants have failed to properly attribute advertising fees extracted from Counter-Plaintiffs in breach of the franchise agreement between Counter-Plaintiffs and Counter-Defendants.

120.

Counter-Plaintiffs will further show that Counter-Defendants have converted advertising fees extracted from Counter-Plaintiffs under the franchise agreements by using said advertising fees for purposes other than that to which Counter-Plaintiffs and Counter-Defendants agreed in said franchise agreements.

121.

By reason of the Counter-Defendants' breach of the franchise agreements and conversion, Counter-Plaintiffs each suffer damages in an amount to be proved at trial but in excess of $75,000.00.

122.

Tommy's R.V. Rentals, Inc. and Tommy Joyce and Marlene Joyce are entitled to a trial by jury and demand a trial by jury.

**WHEREFORE,** Tommy's RV Rentals, Inc., Tommy Joyce and Marlene Joyce pray that all factual issues be tried by jury, and that there be judgment as follows:

1)      Dismissing the claims of plaintiff with prejudice rescinding the franchise agreements and transactions between the parties, and ordering Counter-Defendants to refund.

2)      An Order enjoining the Counters-Defendants from providing discounted prices unavailable to each Counter-Plaintiff to any franchisees who accept either the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer.

3)      An Order granting each Counter-Plaintiff all damages to which they are entitled, which damages exceed $75,000, including all sums but not limited to which they are entitled as a result of the Counter-Defendants' violation of the Louisiana Unfair Trade Practices and Consumer Protection Act.

4)      An Order Enjoining the Counter-Defendants from enforcing the non-compete provisions contained in the Baskin and Robbins Franchisee Agreements against the Counter-Plaintiffs.

5)      An Order that Counter-Plaintiffs be awarded all expenses, costs and disbursements incident to the prosecution of this action, including reasonable attorney, expert and accountants' fees.

6)     Awarding Tommy's RV Rentals, Inc. Tommy Joyce and Marlene Joyce

all  such other or further relief to which they are entitled.

Respectfully Submitted,

_____

VAN C. SENECA #19787
Van C. Seneca L.L.C
1135 Lakeshore Drive
Post Office Drawer 3747
Lake Charles, Louisiana 70602
Telephone:  337-439-1233
Facsimile:  337-439-0911

Of counsel:


GALLAGHER, SHARP, FULTON & NORMAN
JAMES F. KOEHLER (Ohio #0007904)
DANIEL R. KARON (Ohio #0069304)
GEORGE CARR (Ohio #0069372)
GALLAGHER, SHARP, FULTON & NORMAN
Bulkley Building, Seventh Floor
1501 Euclid Avenue
Cleveland, Ohio  44115

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing Answer has this day been sent by regular U.S. Mail postage prepaid and properly addressed to

Mr. Jeffrey L. Karlin
Schmeltezer, Aptaker & Shepard, P.C.
2600 Virginia Avenue
Northwest, Ste. 1000
Wahsington, DC  20037-1905

Mr. Edward D. Wegmann
Jones, Walker, Waechter, Poitevent,
Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, LA  70170-5100

by U.S. Mail, postage prepaid and properly addressed.

Lake Charles, Louisiana, this ___5th___ day of _December_____, 2000.

_____
VAN C. SENECA

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIAN-
FILED

JAN 1 2 2001

ROBERT H. SHMWELL, CLERK
BY_____
                              DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

|  |  |  |
|---|---|---|
| BASKIN-ROBBINS INCORPORATED, a Delaware Corporation, and BASKIN-ROBBINS USA, CO. a California Corporation, | ) ) ) ) ) | Civil Action No. 00-CV-1522 |
|  | ) | JUDGE JAMES T. TRIMBLE, JR. |
| Plaintiffs, | ) ) |  |
| versus | ) ) | MAGISTRATE JUDGE ALONZO P. WILSON |
| TOMMY'S R.V. RENTALS, INC., a Louisiana Corporation, TOMMY JOYCE, and MARLENE JOYCE, | ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

## REPLY TO DEFENDANTS' COUNTERCLAIMS OF PLAINTIFFS
## BASKIN-ROBBINS INCORPORATED AND BASKIN-ROBBINS USA, CO.

Plaintiffs/Counter-Defendants Baskin-Robbins Incorporated and Baskin-Robbins USA, Co. hereby respond to the counterclaims set forth by Defendants/Counter-Plaintiffs Tommy's R.V. Rentals, Inc., Tommy Joyce, and Marlene Joyce in their Answer to Original Complaint and Counterclaims and Jury Trial Demand as follows:

43.    Paragraph 43 contains conclusions of law to which no response is required.  To the extent that any response is required, it is denied.  Counter-Defendants admit that Counter-Plaintiffs are citizens of the State of Louisiana, but deny that they are citizens of the States of Texas, Mississippi and New Mexico, as alleged in Paragraph 43.

N0612261.1



SCANNED

44.     Counter-Defendants deny that Counter-Plaintiffs are currently Baskin-Robbins franchisees, as they have not been Baskin-Robbins franchisees since the termination of the Franchise Agreement for their Baskin-Robbins franchise in Lake Charles, Louisiana on June 16, 2000 and the termination of the Franchise Agreement for their Baskin-Robbins franchise in Moss Bluff, Louisiana on August 9, 2000.

45.     The allegations in Paragraph 45 are legal conclusions to which no response is required.

46.     Counter-Defendants admit that Counter-Plaintiffs owned and operated two "single-brand" Baskin-Robbins franchise locations in Louisiana, but deny that Counter-Plaintiffs currently own or operate any Baskin-Robbins franchise locations. Counter-Plaintiffs admit that "single-brand" franchise locations are franchise locations which operate only under the Baskin-Robbins brand name and sell only Baskin-Robbins approved products.

47.     Counter-Defendants admit that Counter-Plaintiffs reside in Calcasieu Parish, Louisiana. Counter-Defendants are without knowledge or information sufficient to admit or deny the allegation as to where or how Counter-Plaintiffs currently do business. Counter-Defendants admit the remaining allegations in Paragraph 47.

48.     Counter-Defendants admit the allegations in Paragraph 48.

49.     Counter-Defendants admit the allegations in Paragraph 49.

50.     Counter-Defendants admit the allegations in Paragraph 50.

### GENERAL FACTUAL BACKGROUND

51.     Counter-Defendants admit the allegations in Paragraph

52.     The allegations in Paragraph 52 are legal conclusions to which no response is required.

53.     Counter-Defendants admit the allegations in Paragraph

54.     Counter-Defendants admit that Counter-Plaintiffs operated "single-brand" Baskin-Robbins franchise locations in Louisiana, and that they purchased ice cream products from Baskin-Robbins both before and after October 26-27, 1999.  The remaining allegations in Paragraph 54 are legal conclusions to which no response is required.  To the extent that any response is required, the remaining allegations in Paragraph 54 are denied.

55.     Counter-Defendants admit that Counter-Plaintiffs operated a Baskin-Robbins store in Lake Charles, Louisiana pursuant to a Franchise Agreement dated January 25, 1994, and another Baskin-Robbins store in Moss Bluff, Louisiana pursuant to a Franchise Agreement dated March 8, 1997.  Those agreements speak for themselves.  Counter-Defendants deny the remaining allegations in Paragraph 55.

56.     Counter-Defendants admit that on or about October 26 and 27, 1999, representatives of Baskin-Robbins USA, Co. informed Counter-Plaintiffs that their franchise agreements would be honored through the end of their term and that they would receive any renewal of those agreements to which they were entitled.  Counter-Defendants also admit that they informed Counter-Plaintiffs that following the end of the term of their current franchise agreements and any renewal thereof, they would not enter into any further franchise agreements with Counter-Defendants because their stores were located in non-strategic markets.  Counter-Defendants deny the remaining allegations in Paragraph 56.

57.    Counter-Defendants deny that they knowingly withheld information about the decision to designate as non-strategic the market in which Counter-Plaintiffs' stores were located for several months prior to informing Counter-Plaintiffs of the decision. Counter-Defendants admit that the issues of whether to designate certain markets as non-strategic and which markets to declare as non-strategic were discussed for several months prior to October 1999. Counter-Defendants further admit that Counter-Plaintiffs were informed of the decision designating certain markets as non-strategic shortly after it was made. Counter-Defendants are without knowledge or information sufficient to admit or deny the allegation as to what information was material to Counter-Plaintiffs' decision to purchase any product from Baskin-Robbins. Counter-Defendants deny the remaining allegations in Paragraph 57.

58.    Counter-Defendants admit that certain employees of Baskin-Robbins, including Connie Burkart, executed confidentiality agreements pertaining to discussion of non-strategic market issues. Counter-Defendants deny the remaining allegations in Paragraph 58.

59.    Counter-Defendants admit that certain Baskin-Robbins employees executed confidentiality agreements in Las Vegas, Nevada several months prior to Baskin-Robbins' decision on non-strategic markets. Counter-Defendants deny the remaining allegations in Paragraph 59.

60.    Counter-Defendants admit that they sold ice cream and other related services or products to Counter-Plaintiffs between the time when confidentiality agreements were executed and when Counter-Plaintiffs were informed of the decision on non-strategic markets. Counter-Defendants deny the remaining allegations in Paragraph 60.

61.    Counter-Defendants deny the allegations in Paragraph 61.

62.     Counter-Defendants admit that Baskin-Robbins USA, Co. granted franchises to sell ice cream, frozen yogurt and other products and services from retail units in various formats and locations. Counter-Defendants further admit that among the formats and locations were Basic Retail Units, which were located near other retail operations such as strip malls or shopping malls, and Drive-Thru Retail Units, which had a drive-thru capacity. Counter-Defendants also admit that franchises were also granted for Combo Retail Units in which a Baskin-Robbins Retail Unit was operated in conjunction with a franchise granted by Dunkin' Donuts Incorporated or other franchisor. Counter-Defendants admit that single-brand stores are Baskin-Robbins franchises which sell only Baskin-Robbins products. Counter-Defendants deny the remaining allegations in Paragraph 62.

63.     Counter-Defendants deny the allegations in Paragraph 63.

64.     Counter-Defendants admit that the "Chicago Plan" was a strategy for Baskin-Robbins and Dunkin' Donuts franchises in the Chicago, Illinois area only. The quotations in Paragraph 64 are taken from the Chicago Plan, which document speaks for itself. Counter-Defendants deny the remaining allegations in Paragraph 64.

65.     Counter-Defendants deny the allegations in Paragraph 65.

66.     Counter-Defendants admit that between January 1, 1994 and May 8, 1997, Baskin-Robbins USA, Co. sold franchises for single-brand Baskin-Robbins stores located in Texas and other states. Counter-Defendants deny the remaining allegations in Paragraph 66.

67.     Counter-Defendants admit that Counter-Plaintiffs received a Baskin-Robbins UFOC dated November 27, 1996. Counter-Defendants are without knowledge or information sufficient to admit or deny the allegation as to what information was material to Counter-Plaintiffs' decision to

execute franchise agreements for the operation of single-brand stores. Counter-Defendants deny the remaining allegations in Paragraph 67.

68.     Counter-Defendants are without knowledge or information sufficient to admit or deny allegations concerning what information, if any, from Baskin-Robbins UFOCs the Counter-Plaintiffs relied upon in their decision to execute franchise agreements for single-brand stores. Counter-Defendants deny the remaining allegations in Paragraph 68.

69.     Counter-Defendants are without knowledge or information sufficient to admit or deny allegations concerning what information, if any, was relied upon by Counter-Plaintiffs in their decision to invest capital and other resources into the operation of their single-brand stores. Counter-Defendants deny the remaining allegations in Paragraph 69.

70.     To the extent that Paragraph 70 quotes statements made by Tony Gioia from a videotape issued by Counter-Defendants in 1996, the videotape speaks for itself. Counter-Defendants deny the remaining allegations in Paragraph 70.

71.     Counter-Defendants admit that during the period from January 1, 1994 to May 8, 1997, Kenton C. Woods was Vice President for Finance and that Maria Flores was Vice President for Human Resources for Baskin-Robbins Incorporated and Baskin-Robbins USA, Co. Counter-Defendants deny the remaining allegations in Paragraph 71.

72.     Counter-Defendants admit that Counter-Plaintiffs entered into two Baskin-Robbins franchise agreements between January 1, 1994 and May 8, 1997. Counter-Defendants are without knowledge or information sufficient to admit or deny allegations concerning what information, if any, from Baskin-Robbins UFOCs Counter-Plaintiffs relied upon in their decision to execute those franchise agreements. Counter-Defendants deny the remaining allegations in Paragraph 72.

73.     Counter-Defendants admit that they issued a UFOC dated May 9, 1997, which document speaks for itself.  Counter-Defendants deny the remaining allegations in Paragraph 73.

74.     Counter-Defendants admit that on or about October 26 and 27, 1999, representatives of Baskin-Robbins USA, Co. informed Counter-Plaintiffs that their franchise agreements would be honored through the end of their term, and that they would receive any renewal of these agreements to which they were entitled.  Counter-Defendants also admit that they informed Counter-Plaintiffs that following the end of the term of their current franchise agreements and any renewal thereof to which they were entitled, Counter-Defendants would not enter into any further franchise agreements with the Counter-Plaintiffs.  Counter-Defendants deny the remaining allegations in Paragraph 74.

75.     Counter-Defendants are without knowledge or information sufficient to admit or deny the allegations in Paragraph 75.

76.     Counter-Defendants deny the allegations in Paragraph 76.

77.     To the extent that Counter-Plaintiffs raise allegations in Paragraph 77 as to the actions of "contracted buyers," Counter-Defendants are without knowledge or information sufficient to admit or deny the allegations.  Counter-Defendants deny the remaining allegations in Paragraph 77.

78.     Counter-Defendants admit the allegations in Paragraph 78.

79.     Counter-Defendants admit the allegations in Paragraph 79.

80.     Counter-Defendants admit the allegations in Paragraph 80.

81.     Counter-Defendants admit the allegations in Paragraph 81..

82.     Counter-Defendants admit the allegations in Paragraph 82.

83.     Counter-Defendants admit the allegations in Paragraph 83.

84.     Counter-Defendants deny the allegations in Paragraph 84.

85.     Counter-Defendants deny the allegations in Paragraph 85.

## BASKIN-ROBBINS AS TRUSTEE OF THE BASKIN-ROBBINS ADVERTISING TRUST FUND

86.     Counter-Defendants deny the allegations in Paragraph 86.

87.     Counter-Defendants admit that the Baskin-Robbins System and Product Advertising Trust Fund was established in 1985 as a means of providing certain marketing and promotional support to Baskin-Robbins stores operating under Baskin-Robbins franchise agreements.  Counter-Defendants deny the remaining allegations in Paragraph 87.

88.     Counter-Defendants admit that Baskin-Robbins franchisees contribute a percentage of their gross sales to the Baskin-Robbins System and Product Advertising Fund.  Counter-Defendants deny the remaining allegations in Paragraph 88.

89.     Counter-Defendants admit that the Baskin-Robbins System and Product Advertising Trust Fund is not an asset of Baskin-Robbins and that independent auditor reports are prepared for the Baskin-Robbins System and Product Advertising Trust Fund.  Counter-Defendants deny the remaining allegations in Paragraph 89.

90.     Counter-Defendants deny the allegations in Paragraph 90.

91.     Counter-Defendants admit that from January 1, 1997 to December 31, 1998, Baskin-Robbins franchises were categorized into three tiers for marketing purposes.  Counter-Defendants further admit that Tier I included franchises in major media markets and that Tier II and Tier II included franchises in relatively smaller media markets.  Counter-Defendants admit that the market in which the Counter-Plaintiffs' franchises were located was designated as Tier III.  Counter-Defendants deny the remaining allegations in Paragraph 91.

92.    Counter-Defendants deny the allegations in Paragraph 92.

93.    To the extent that the allegations in Paragraph 93 reference a memorandum dated October 20, 1997, the document speaks for itself.  Counter-Defendants deny all remaining allegations in Paragraph 93.

94.    Counter-Defendants deny the allegations in Paragraph 94.

95.    Counter-Defendants deny the allegations in Paragraph 95.

### COUNT ONE
**Unfair or Deceptive Acts or Practices in Violation of
the Louisiana Unfair Trade Practices and Consumer Protection Act**

96.    Counter-Defendants' answers to Paragraphs 43-95 are incorporated by reference as if fully set forth herein.

97.    Counter-Defendants deny the allegations in Paragraph 97.

98.    Counter-Defendants deny the allegations in Paragraph 98.

99.    Counter-Defendants deny the allegations in Paragraph 99.

### COUNT TWO
**Fraud**

100.    Counter-Defendants' answers to Paragraphs 43-99 are incorporated by reference as if fully set forth herein.

101.    Counter-Defendants deny the allegations in Paragraph 101.

102.    Counter-Defendants deny the allegations in Paragraph 102.

103.    Counter-Defendants are without knowledge or information as to what information, if any, Counter-Plaintiffs relied upon in purchasing ice cream products and related products and

services sufficient to admit or deny the allegations in Paragraph 103.  Counter-Defendants deny the

remaining allegations in Paragraph 103.

106. Counter-Defendants deny the allegations in Paragraph 104.

## COUNT THREE
### Breach of Implied Covenant of Good Faith and Fair Dealing

105. Counter-Defendants' answers to Paragraphs 43-104 are incorporated by reference as

if fully set forth herein.

106. Counter-Defendants deny the allegations in Paragraph 106.

107. Counter-Defendants deny the allegations in Paragraph 107.

## COUNT FOUR
### For Injunction Against Enforcement of the Non-Compete Provisions of the Baskin-Robbins Franchise Agreement

108. Counter-Defendants' answers to Paragraphs 43-107 are incorporated by reference as

if fully set forth herein.

109. Counter-Defendants admit that they have no current plans to sell new franchises in

markets that have been designated as non-strategic, including the one where Counter-Plaintiffs'

franchises were located.  Counter-Defendants deny the remaining allegations in Paragraph 109.

110. Counter-Defendants deny the allegations in Paragraph 110.

111. Counter-Defendants deny the allegations in Paragraph 111.

112. Counter-Defendants deny the allegations in Paragraph 112.

113. Counter-Defendants deny the allegations in Paragraph 113.

114. Counter-Defendants deny the allegations in Paragraph 114.

115. Counter-Defendants deny the allegations in Paragraph 115.

## COUNT FIVE
### Breach of Fiduciary Duty and Obligations

116.    Counter-Defendants' answers to Paragraphs 43-115 are incorporated by reference as if fully set forth herein.

117.    Counter-Defendants deny the allegations in Paragraph 117.

## COUNT FIVE
### Breach of Fiduciary Duty and Obligations

118.    Counter-Defendants' answers to Paragraphs 43-117 are incorporated by reference as if fully set forth herein.

119.    Counter-Defendants deny the allegations in Paragraph 119.

120.    Counter-Defendants deny the allegations in Paragraph 120.

121.    Counter-Defendants deny the allegations in Paragraph 121.

122.    Counter-Defendants deny that the Counter-Plaintiffs are entitled to a trial by jury pertaining to issues arising out of their Moss Bluff franchise location because the franchise agreement for that franchise location includes a provision specifically waiving any right to a jury trial.

### Affirmative Defenses

1.    Counter-Defendants plead the affirmative defenses of waiver and estoppel.

2.    Counter-Defendants plead that Counter-Plaintiffs have failed to state any claim upon which relief can be granted.

3.    Counter-Defendants plead that Counter-Plaintiffs' claims are barred by their failure to perform their contractual obligations.

4.      Counter-Defendants plead that Counter-Plaintiffs are barred from recovery because they are unable to prove that Counter-Defendants caused them any damage.

5.      Counter-Defendants plead that if Counter-Plaintiffs suffered damages, such damages were caused by the acts or omissions of Counter-Plaintiffs or other persons for whose acts or omissions Counter-Defendants are not liable.

6.      Counter-Defendants plead that Counter-Plaintiffs' claims are barred by the applicable contractual limitations periods.

7.      Counter-Defendants plead that Counter-Plaintiffs' claims are barred by the applicable statutory limitations periods.

8.      Counter-Defendants plead that Counter-Plaintiffs' claim under the Louisiana Unfair Trade Practices and Consumer Protection Act is barred by one or more statutory or common-law defenses including, but not limited to, Counter-Plaintiffs' failure to comply with statutory notice requirements.

9.      Without conceding that Counter-Plaintiffs have suffered any damages as a result of any purportedly wrongful acts or omissions by Counter-Defendants, Counter-Defendants plead that Counter-Plaintiffs are barred from recovery, in whole or in part, for failing to mitigate their alleged damages.

10.     Counter-Defendants plead the affirmative defense of release.

11.     Counter-Defendants deny that Counter-Plaintiffs are entitled to recover their costs and/or attorneys' fees under any theory of law.

12.     Counter-Defendants plead that Counter-Plaintiffs are barred from seeking equitable relief by their unclean hands.

13.    Counter-Defendants plead that Counter-Plaintiffs are barred from seeking equitable relief by the doctrine of laches.

WHEREFORE, Counter-Defendants pray that this Court dismiss Counter-Plaintiffs' counterclaims with prejudice, award Counter-Defendants judgment against Counter-Plaintiffs for their costs and attorneys' fees incurred in connection with defending those counterclaims, and award Counter-Defendants such other relief as this Court may deem just and proper.

Respectfully submitted,

EDWARD D. WEGMANN  Bar No. 13315
Jones, Walker, Waechter,
    Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana   70170-5100
Telephone:    (504) 582-8000
Facsimile:    (504) 582-8011

Robert L. Zisk
Jeffrey L. Karlin
Roland B. Ninomiya
SCHMELTZER, APTAKER & SHEPARD, P.C.
2600 Virginia Avenue, N.W., Suite 1000
Washington, D.C.  20037
Telephone:    (202) 333-8800
Facsimile:    (202) 625-3311

ATTORNEYS FOR PLAINTIFFS/COUNTER-
DEFENDANTS BASKIN-ROBBINS
INCORPORATED AND
BASKIN-ROBBINS, USA, CO.

Dated: January  11 , 2001

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Reply to Defendants'

Counterclaims of Plaintiffs Baskin-Robbins Incorporated and Baskin-Robbins USA, Co. was served

by first-class mail on this _____ day of January, 2001 on the following:

> Van C. Seneca, Esq.
> Van C. Seneca, L.L.C.
> 1135 Lakeshore Drive, 5th Floor, Suite A
> Lake Charles, LA 70601

Edward D. Wegmann

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
F I L E D

JAN 2 9 2001

ROBERT H. SHEMWELL, CLERK
BY_____
                    DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

BASKIN-ROBBINS INCORPORATED,    :    CIVIL ACTION
A Delaware Corporation, and
BASKIN-ROBBINS USA, CO.         :    NO. CV00-1522 LC
A California Corporation

Versus                          :    JUDGE  TRIMBLE

TOMMY'S R.V. RENTALS, INC.
A Louisiana Corporation,        :    MAGISTRATE JUDGE WILSON
TOMMY JOYCE, and
MARLENE JOYCE

## ANSWER TO FIRST AMENDED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Tommy's R.V.

Rentals, Inc., Tommy Joyce and Marlene Joyce, who respectfully answer the claims

asserted against them in the First Amended Complaint, by denying all of the allegation

contained in said first amended complaint except as specifically admitted, and answering

said first amended complaint paragraph by paragraph respectfully plead as follows:

1.

Defendants are without sufficient information to justify a belief as to the truth of

the allegations of Paragraph 1, and therefore, those allegations are denied.

2.

The allegations of Paragraph 2 are denied, except to admit the domicile of

Tommy's R.V. Rentals.



SCANNED

G:\VCS\word\joyce, tommy\answer to 1st amended comp from BR.doc

3.

The allegations of Paragraph 3 are denied as written, except to admit the domicile of Tommy Joyce.

4.

The allegations of Paragraph 4 are denied as written, except to admit the domicile of Marlene Joyce.

5.

The allegations of Paragraph 5 are denied.

6.

The allegations of Paragraph 6 are denied.

7.

The allegations of Paragraph 7 are denied.

8.

The allegations of Paragraph 8 are admitted.

9.

The allegations of Paragraph 9 are denied.

10.

The allegations of Paragraph 10 are denied.

11.

The allegations of Paragraph 11 are denied.

12.

The allegations of Paragraph 12 are denied.

13.

The allegations of Paragraph 13 are denied.

14.

The allegations of Paragraph 14 are denied.

15.

The allegations of Paragraph 15 are denied.

16.

The allegations of Paragraph 16 are denied.

17.

The allegations of Paragraph 17 are denied.

18.

The allegations of Paragraph 18 are admitted.

19.

The allegations of Paragraph 19 are denied.

20.

The allegations of Paragraph 20 are denied.

21.

The allegations of Paragraph 21 are denied.

22.

The allegations of Paragraph 22 are denied.

23.

The allegations of Paragraph 23 are denied.

24.

The allegations of Paragraph 24 are denied.

25.

The allegations of Paragraph 25 are denied.

26.

The allegations of Paragraph 26 are denied.

27.

The allegations of Paragraph 27 are denied.

28.

The allegations of Paragraph 28 are denied.

29.

The allegations of Paragraph 29 are denied.

30.

The allegations of Paragraph 30 are denied.

31.

The allegations of Paragraph 31 are admitted.

32.

The allegations of Paragraph 32 are denied.

33.

The allegations of Paragraph 33 are denied.

34.

The allegations of Paragraph 34 are denied.

35.

The allegations of Paragraph 35 are denied.

36.

The allegations of Paragraph 36 are denied.

37.

The allegations of Paragraph 37 are denied.

38.

The allegations of Paragraph 38 are denied.

39.

The allegations of Paragraph 39 are denied.

40.

The allegations of Paragraph 40 are denied.

41.

The allegations of Paragraph 41 are denied.

42.

The allegations of Paragraph 42 are denied.

43.

The allegations of Paragraph 43 are denied.

44.

The allegations of Paragraph 44 are denied.

45.

The allegations of Paragraph 45 are denied.

46.

The allegations of Paragraph 46 are denied.

47.

The allegations of Paragraph 47 are denied.

48.

The allegations of Paragraph 48 are denied.

49.

The allegations of Paragraph 49 are denied.

50.

The allegations of Paragraph 50 are denied.

51.

The allegations of Paragraph 51 are denied.

52.

The allegations of Paragraph 52 are denied.

53.

The allegations of Paragraph 53 are denied.

54.

The allegations of Paragraph 54 are denied.

55.

The allegations of Paragraph 55 are denied.

56.

The allegations of Paragraph 56 are denied.


57.

The allegations of Paragraph 57 are denied.

58.

The allegations of Paragraph 58 are denied.

59.

The allegations of Paragraph 59 are denied.

60.

The allegations of Paragraph 60 are denied.

61.

The allegations of Paragraph 61 are denied.

62.

The allegations of Paragraph 62 are denied.

63.

The allegations of Paragraph 63 are denied.

64.

The allegations of Paragraph 64 are denied.

65.

The allegations of Paragraph 65 are denied.

66.

The allegations of Paragraph 66 are denied.

67.

The allegations of Paragraph 67 are denied.

68.

The allegations of Paragraph 68 are denied.

69.

The allegations of Paragraph 69 are denied.

70.

The allegations of Paragraph 70 are denied.

71.

The allegations of Paragraph 71 are denied.

72.

The allegations of Paragraph 72 are denied.

73.

The allegations of Paragraph 73 are denied.

74.

The allegations of Paragraph 74 are denied.

75.

AND NOW, in further answer to the First Amended Complaint, Tommy's RV Rentals, Inc., Tommy Joyce and Marlene Joyce adopt all affirmative defenses, counterclaims, and other statements contained in their original answer, and adopt same by reference as set forth fully herein.

**WHEREFORE,** Tommy's RV Rentals, Inc., Tommy Joyce and Marlene Joyce pray that all factual issues be tried by jury, and that there be judgment as follows:

1)      Dismissing the claims of plaintiff with prejudice rescinding the franchise agreements and transactions between the parties, and ordering plaintiffs and  counter-defendants to refund all sums received by them pursuant to the franchise agreements at issue in this action..

2)      An Order enjoining the plaintiff and Counter-Defendants from providing discounted prices unavailable to Tommy's RV Rentals, Inc., Tommy Joyce and Marlene Joyce to any franchisees who either accept the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer.

3)      An Order granting Tommy's RV Rentals, Inc., Tommy Joyce and Marlene Joyce all compensatory and punitive damages to which they are entitled, which damages exceed $75,000, including all sums but not limited to which they are entitled as a result of the plaintiff and Counter-Defendants' violation of the Louisiana Unfair Trade Practices and Consumer Protection Act.

4)      An Order Enjoining the plaintiff and  Counter-Defendants from enforcing the non-compete provisions contained in the Baskin and Robbins Franchisee Agreements against the Counter-Plaintiffs.

5)      An Order that Counter-Plaintiffs be awarded all expenses, costs and disbursements incident to the prosecution of this action, including reasonable attorney, expert and accountants' fees.

6)      Awarding Tommy's RV Rentals, Inc. Tommy Joyce and Marlene Joyce all  other or further relief to which they are entitled.

Respectfully Submitted,

VAN C. SENECA #19787
Van C. Seneca L.L.C
1135 Lakeshore Drive
Post Office Drawer 3747
Lake Charles, Louisiana 70602
Telephone: 337-439-1233
Facsimile: 337-439-0911

Of counsel:

GALLAGHER, SHARP, FULTON & NORMAN
JAMES F. KOEHLER (Ohio #0007904)
DANIEL R. KARON (Ohio #0069304)
GEORGE CARR (Ohio #0069372)
GALLAGHER, SHARP, FULTON & NORMAN
Bulkley Building, Seventh Floor
1501 Euclid Avenue
Cleveland, Ohio 44115

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the above and foregoing Answer has this day been sent by regular U.S. Mail postage prepaid and properly addressed to

Mr. Jeffrey L. Karlin
Schmeltezer, Aptaker & Shepard, P.C.
2600 Virginia Avenue
Northwest, Ste. 1000
Wahsington, DC  20037-1905

Mr. Edward D. Wegmann
Jones, Walker, Waechter, Poitevent,
Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, LA  70170-5100

by U.S. Mail, postage prepaid and properly addressed.

Lake Charles, Louisiana, this 29th day of January, 2001.

_____
VAN C. SENECA

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ᴲ ᴵ ᴌ ᴲ ᴰ

JAN 2 9 2001

ROBERT H. SHEMWELL, CLERK
BY_____
                    DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

BASKIN-ROBBINS INCORPORATED,   :   CIVIL ACTION
A Delaware Corporation, and
BASKIN-ROBBINS USA, CO.        :   NO. CV00-1522 LC
A California Corporation

Versus                         :   JUDGE  TRIMBLE

TOMMY'S R.V. RENTALS, INC.
A Louisiana Corporation,       :   MAGISTRATE JUDGE WILSON
TOMMY JOYCE, and
MARLENE JOYCE

### ANSWER TO SECOND AMENDED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Tommy's R.V.

Rentals, Inc., Tommy Joyce and Marlene Joyce, who respectfully answer the claims

asserted against them in the Second Amended Complaint, by denying all of the allegation

contained in said complaint except as specifically admitted, and answering said second

amended complaint paragraph by paragraph respectfully plead as follows:

1.

Defendants are without sufficient information to justify a belief as to the truth of

the allegations of Paragraph 1, and therefore, those allegations are denied.

2.

The allegations of Paragraph 2 are denied, except to admit the domicile of

Tommy's R.V. Rentals.



**SCANNED**

3.

The allegations of Paragraph 3 are denied as written, except to admit the domicile of Tommy Joyce.

4.

The allegations of Paragraph 4 are denied as written, except to admit the domicile of Marlene Joyce.

5.

The allegations of Paragraph 5 are denied.

6.

The allegations of Paragraph 6 are denied.

7.

The allegations of Paragraph 7 are denied.

8.

The allegations of Paragraph 8 are admitted.

9.

The allegations of Paragraph 9 are denied.

10.

The allegations of Paragraph 10 are denied.

11.

The allegations of Paragraph 11 are denied.

12.

The allegations of Paragraph 12 are denied.

13.

The allegations of Paragraph 13 are denied.

14.

The allegations of Paragraph 14 are denied.

15.

The allegations of Paragraph 15 are denied.

16.

The allegations of Paragraph 16 are denied.

17.

The allegations of Paragraph 17 are denied.

18.

The allegations of Paragraph 18 are admitted.

19.

The allegations of Paragraph 19 are denied.

20.

The allegations of Paragraph 20 are denied.

21.

The allegations of Paragraph 21 are denied.

22.

The allegations of Paragraph 22 are denied.

23.

The allegations of Paragraph 23 are denied.

24.

The allegations of Paragraph 24 are denied.

25.

The allegations of Paragraph 25 are denied.

26.

The allegations of Paragraph 26 are denied.

27.

The allegations of Paragraph 27 are denied.

28.

The allegations of Paragraph 28 are denied.

29.

The allegations of Paragraph 29 are denied.

30.

The allegations of Paragraph 30 are denied.

31.

The allegations of Paragraph 31 are admitted.

32.

The allegations of Paragraph 32 are denied.

33.

The allegations of Paragraph 33 are denied.

34.

The allegations of Paragraph 34 are denied.

35.

The allegations of Paragraph 35 are denied.

36.

The allegations of Paragraph 36 are denied.

37.

The allegations of Paragraph 37 are denied.

38.

The allegations of Paragraph 38 are denied.

39.

The allegations of Paragraph 39 are denied.

40.

The allegations of Paragraph 40 are denied.

41.

The allegations of Paragraph 41 are denied.

42.

The allegations of Paragraph 42 are denied.

43.

The allegations of Paragraph 43 are denied.

44.

The allegations of Paragraph 44 are denied.

45.

The allegations of Paragraph 45 are denied.

46.

The allegations of Paragraph 46 are denied.

47.

The allegations of Paragraph 47 are denied.

48.

The allegations of Paragraph 48 are denied.

49.

The allegations of Paragraph 49 are denied.

50.

The allegations of Paragraph 50 are denied.

51.

The allegations of Paragraph 51 are denied.

52.

The allegations of Paragraph 52 are denied.

53.

The allegations of Paragraph 53 are denied.

54.

The allegations of Paragraph 54 are denied.

55.

The allegations of Paragraph 55 are denied.

56.

The allegations of Paragraph 56 are denied.

57.

The allegations of Paragraph 57 are denied.

58.

The allegations of Paragraph 58 are denied.

59.

The allegations of Paragraph 59 are denied.

60.

The allegations of Paragraph 60 are denied.

61.

The allegations of Paragraph 61 are denied.

62.

The allegations of Paragraph 62 are denied.

63.

The allegations of Paragraph 63 are denied.

64.

The allegations of Paragraph 64 are denied.

65.

The allegations of Paragraph 65 are denied.

66.

The allegations of Paragraph 66 are denied.

67.

The allegations of Paragraph 67 are denied.

68.

The allegations of Paragraph 68 are denied.

69.

The allegations of Paragraph 69 are denied.

70.

The allegations of Paragraph 70 are denied.

71.

The allegations of Paragraph 71 are denied.

72.

The allegations of Paragraph 72 are denied.

73.

The allegations of Paragraph 73 are denied.

74.

The allegations of Paragraph 74 are denied.

75.

The allegations of Paragraph 75are denied.

76.

The allegations of Paragraph 76 are denied.

77.

The allegations of Paragraph 77 are denied.

78.

The allegations of Paragraph 78 are denied.

79.

The allegations of Paragraph 79 are denied.

80.

The allegations of Paragraph 80 are denied.

81.

The allegations of Paragraph 81 are denied.

82.

The allegations of Paragraph 82 are denied.

83.

The allegations of Paragraph 83 are denied.

84.

The allegations of Paragraph 84 are denied.

85.

The allegations of Paragraph 85 are denied.

86.

The allegations of Paragraph 86 are denied.

87.

The allegations of Paragraph 87 are denied.

88.

The allegations of Paragraph 88 are denied.

89.

The allegations of Paragraph 89 are denied.

90.

The allegations of Paragraph 90 are denied.

91.

The allegations of Paragraph 91 are denied.

92.

The allegations of Paragraph 92 are denied.

93.

The allegations of Paragraph 93 are denied.

94.

The allegations of Paragraph 94 are denied.

95.

The allegations of Paragraph 95 are denied.

96.

The allegations of Paragraph 96 are denied.

97.

The allegations of Paragraph 97 are denied.

98.

AND NOW, in further answer to the Second Amended Complaint, Tommy's RV

Rentals, Inc., Tommy Joyce and Marlene Joyce adopt all affirmative defenses,

counterclaims, and other statements contained in their original answer, and adopt same by reference as set forth fully herein.

**WHEREFORE,** Tommy's RV Rentals, Inc., Tommy Joyce and Marlene Joyce pray that all factual issues be tried by jury, and that there be judgment as follows:

1)      Dismissing the claims of plaintiff with prejudice, rescinding the franchise agreements and transactions between the parties, and ordering plaintiffs and counter-defendants to refund all sums received by them pursuant to the franchise agreements at issue in this action..

2)      An Order enjoining the plaintiff and Counter-Defendants from providing discounted prices unavailable to Tommy's RV Rentals, Inc., Tommy Joyce and Marlene Joyce to any franchisees who either accept the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer.

3)      An Order granting Tommy's RV Rentals, Inc., Tommy Joyce and Marlene Joyce all compensatory and punitive damages to which they are entitled, which damages exceed $75,000, including all sums but not limited to which they are entitled as a result of the plaintiff and Counter-Defendants' violation of the Louisiana Unfair Trade Practices and Consumer Protection Act.

4)      An Order Enjoining the plaintiff and Counter-Defendants from enforcing the non-compete provisions contained in the Baskin and Robbins Franchisee Agreements against the Counter-Plaintiffs.

5)      An Order that Counter-Plaintiffs be awarded all expenses, costs and disbursements incident to the prosecution of this action, including reasonable attorney, expert and accountants' fees.

6)      Awarding Tommy's RV Rentals, Inc. Tommy Joyce and Marlene Joyce all other or further relief to which they are entitled.

Respectfully Submitted,

_____

VAN C. SENECA #19787
Van C. Seneca L.L.C
1135 Lakeshore Drive
Post Office Drawer 3747
Lake Charles, Louisiana 70602
Telephone:  337-439-1233
Facsimile:  337-439-0911

Of counsel:


GALLAGHER, SHARP, FULTON & NORMAN
JAMES F. KOEHLER (Ohio #0007904)
DANIEL R. KARON (Ohio #0069304)
GEORGE CARR (Ohio #0069372)
GALLAGHER, SHARP, FULTON & NORMAN
Bulkley Building, Seventh Floor
1501 Euclid Avenue
Cleveland, Ohio  44115

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing Answer has this day been sent by regular U.S. Mail postage prepaid and properly addressed to

Mr. Jeffrey L. Karlin
Schmeltezer, Aptaker & Shepard, P.C.
2600 Virginia Avenue
Northwest, Ste. 1000
Wahsington, DC 20037-1905

Mr. Edward D. Wegmann
Jones, Walker, Waechter, Poitevent,
Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170-5100

by U.S. Mail, postage prepaid and properly addressed.

Lake Charles, Louisiana, this 29TH day of January, 2001.

_____
VAN C. SENECA

FILED-CLERK

DISC | TRADEM 02
CLOSED

TEXAS-EASTERN

U.S. District Court
U.S. District Court for Western Louisiana (Lake Charles)

CIVIL DOCKET FOR CASE #: 00-CV-1522

Baskin Robbins Inc, et al v. Tommys R V Rentals, et al        Filed: 06/23/00
Assigned to: Judge James T Trimble, Jr        Jury demand: Defendant
                Referred to: Magistrate Judge Alonzo P Wilson
Demand: $0,000                              Nature of Suit: 840
Lead Docket: None                           Jurisdiction: Federal Question

Cause: 15:1114 Trademark Infringement

**501CV077**

BASKIN ROBBINS INC          Edward Dirk Wegmann
    plaintiff               504-582-8011
                            504-582-8226
                            [COR LD NTC]
                            Genevieve H Salassi
                            504-582-8011
                            504-582-8727
                            [COR]
                            Jones Walker et al
                            201 St Charles Ave Ste 5100
                            New Orleans, LA 70170
                            504-582-8000
                            FTS 582-8011

                            Robert L Zisk
                            [COR]
                            Thomas M Finan
                            202-625-3311
                            [COR NTC]
                            Jeffrey L Karlin
                            [COR]
                            Roland B Ninomiya
                            202-625-3311
                            [COR NTC]
                            Schmeltzer Aptaker et al
                            2600 Virginia Ave N W Ste 1000
                            Washington, DC 20037-1905
                            202-333-8800
                            FTS 337-6065

BASKIN ROBBINS U S A CO     Edward Dirk Wegmann
    plaintiff               (See above)
                            [COR LD NTC]
                            Genevieve H Salassi
                            (See above)
                            [COR]

Docket as of February 28, 2001 11:28 am        Page 1

ATTEST A TRUE COPY:
ROBERT H. SHEMWELL, CLERK
USDC, WESTERN DISTRICT OF LA
BY
DATE 02/28/01

```
Proceedings include all events.                                DISC    TRADEM
2:00cv1522 Baskin Robbins Inc, et al v. Tommys R V Rentals, et al CLOSED
```

```
                                Robert L Zisk
                                (See above)
                                [COR]
                                Thomas M Finan
                                (See above)
                                [COR NTC]
                                Jeffrey L Karlin
                                (See above)
                                [COR]
                                Roland B Ninomiya
                                (See above)
                                [COR NTC]


    v.


TOMMY JOYCE                     Van Clifton Seneca
      defendant                 337-439-0911
                                [COR LD NTC]
                                P O Box 3747
                                Lake Charles, LA 70602
                                337-439-1233
                                FTS 439-0911


MARLENE JOYCE                   Van Clifton Seneca
      defendant                 (See above)
                                [COR LD NTC]


TOMMYS R V RENTALS INC          Van Clifton Seneca
      defendant                 (See above)
                                [COR LD NTC]


========================


TOMMY JOYCE                     Van Clifton Seneca
      counter-claimant          337-439-0911
                                [COR LD NTC]
                                P O Box 3747
                                Lake Charles, LA 70602
                                337-439-1233
                                FTS 439-0911


MARLENE JOYCE                   Van Clifton Seneca
      counter-claimant          (See above)
                                [COR LD NTC]


TOMMYS R V RENTALS INC          Van Clifton Seneca
```

```
Proceedings include all events.                              DISC    TRADEM
2:00cv1522 Baskin Robbins Inc, et al v. Tommys R V Rentals, et al CLOSED
```

```
       counter-claimant              (See above)
                                      [COR LD NTC]


    v.


BASKIN ROBBINS INC                    Edward Dirk Wegmann
       counter-defendant              504-582-8011
                                      504-582-8226
                                      [COR LD NTC]
                                      Genevieve H Salassi
                                      504-582-8011
                                      504-582-8727
                                      [COR]
                                      Jones Walker et al
                                      201 St Charles Ave Ste 5100
                                      New Orleans, LA 70170
                                      504-582-8000
                                      FTS 582-8011

                                      Robert L Zisk
                                      [COR]
                                      Thomas M Finan
                                      202-625-3311
                                      [COR NTC]
                                      Jeffrey L Karlin
                                      [COR]
                                      Roland B Ninomiya
                                      202-625-3311
                                      [COR NTC]
                                      Schmeltzer Aptaker et al
                                      2600 Virginia Ave N W Ste 1000
                                      Washington, DC 20037-1905
                                      202-333-8800
                                      FTS 337-6065


BASKIN ROBBINS U S A CO               Edward Dirk Wegmann
       counter-defendant              (See above)
                                      [COR LD NTC]
                                      Genevieve H Salassi
                                      (See above)
                                      [COR]

                                      Robert L Zisk
                                      (See above)
                                      [COR]
                                      Thomas M Finan
                                      (See above)
                                      [COR NTC]
                                      Jeffrey L Karlin
                                      (See above)
                                      [COR]
```

```
Docket as of February 28, 2001 11:28 am              Page 3
```

Proceedings include all events.                                      DISC     TRADEM
2:00cv1522 Baskin Robbins Inc, et al v. Tommys R V Rentals, et al CLOSED

                                Roland B Ninomiya
                                (See above)
                                [COR NTC]

Proceedings include all events.                                    DISC    TRADEM
2:00cv1522 Baskin Robbins Inc, et al v. Tommys R V Rentals, et al CLOSED

6/23/00  --      Filing Fee; Amount of Fee 150.00 Receipt #90398. (mht)
                 [Entry date 06/26/00] [Edit date 06/26/00]

6/23/00  --      CASE ASSIGNED to Magistrate Judge Alonzo P Wilson for
                 Discovery (sd) [Entry date 06/27/00]

6/23/00  1       COMPLAINT filed (sd) [Entry date 06/27/00]

6/27/00  --      COPY of docket sheet and complaint sent to appropriate
                 registry this date. (sd) [Entry date 06/27/00]

7/10/00  2       SUMMONS(ES) issued for Tommy Joyce, Marlene Joyce, Tommys R
                 V Rentals (sd) [Entry date 07/10/00]

7/31/00  3       MOTION by Baskin Robbins Inc, Baskin Robbins U S A to
                 appear pro hac vice for Robert L Zisk with Proposed Order
                 referred to Magistrate Judge Alonzo P Wilson (sem)
                 [Entry date 07/31/00]

7/31/00  4       MOTION by Baskin Robbins Inc, Baskin Robbins U S A to
                 appear pro hac vice for Thomas M Finan with Proposed Order
                 referred to Magistrate Judge Alonzo P Wilson (sem)
                 [Entry date 07/31/00]

7/31/00  5       MOTION by Baskin Robbins Inc, Baskin Robbins U S A to
                 appear pro hac vice for Jeffrey L Karlin with Proposed
                 Order referred to Magistrate Judge Alonzo P Wilson (sem)
                 [Entry date 07/31/00]

7/31/00  6       RETURN OF SERVICE executed as to Tommy Joyce, Marlene
                 Joyce, Tommys R V Rentals on 7/25/00; Answer due on 8/14/00
                 for Tommy Joyce, for Marlene Joyce, for Tommys R V Rentals
                 (sem) [Entry date 08/01/00]

8/2/00   7       ORDER granting [3-1] motion to appear pro hac vice for
                 Robert L Zisk for plaintiffs.  (signed by Magistrate Judge
                 Alonzo P Wilson)  NOE by: sjd (sd) [Entry date 08/03/00]

8/2/00   8       ORDER granting [4-1] motion to appear pro hac vice for
                 Thomas M Finan for plaintiffs.  (signed by Magistrate Judge
                 Alonzo P Wilson)  NOE by: sjd (sd) [Entry date 08/03/00]

8/2/00   9       ORDER granting [5-1] motion to appear pro hac vice for
                 Jeffrey L Karlin for plaintiffs.  (signed by Magistrate
                 Judge Alonzo P Wilson)  NOE by: sjd (sd)
                 [Entry date 08/03/00]

8/10/00  10      FIRST AMENDED COMPLAINT by Baskin Robbins Inc and Baskin
                 Robbins U S A, (Answer due 8/20/00 for Tommys R V Rentals,
                 for Marlene Joyce, for Tommy Joyce) amending [1-1]
                 complaint (cw) [Entry date 08/10/00]

Proceedings include all events.                                    DISC    TRADEM
2:00cv1522 Baskin Robbins Inc, et al v. Tommys R V Rentals, et al CLOSED

9/20/00   11   MOTION by Baskin Robbins Inc and Baskin Robbins U S A to
               appear pro hac vice for Roland B Ninomiya with Proposed
               Order referred to Magistrate Judge Alonzo P Wilson (consent
               not sought) (cw) [Entry date 09/20/00]

9/25/00   12   ORDER granting [11-1] motion to appear pro hac vice for
               Roland B Ninomiya on behalf of Baskin Robbins Inc, Baskin
               Robbins U S A Co.  (signed by Magistrate Judge Alonzo P
               Wilson)  NOE by: sjd (sd) [Entry date 09/26/00]

10/25/00 13    DEFICIENCY NOTICE to counsel for Baskin Robbins Inc, Baskin
               Robbins U S A re: Motion for Leave to File Second Amended
               Complaint submitted on 10/25/00; Reason: is not signed by
               local counsel. NOE by tr (tr) [Entry date 10/25/00]

10/25/00 15    DEFICIENT PLEADING submitted by Baskin Robbins Inc, Baskin
               Robbins U S A; Name of pleading: motion for leave to file a
               second amended complaint; Reason for deficiency: not signed
               by local counsel. Plaintiff filed a corrected motion, doc
               #15. (sem) [Entry date 10/30/00]

10/30/00 14    MOTION by Baskin Robbins Inc, Baskin Robbins U S A to
               amend [1-1] complaint with Proposed Order and second
               amended complaint referred to Magistrate Judge Alonzo P
               Wilson (bj) [Entry date 10/30/00]

11/1/00   16   ORDER granting [14-1] motion to amend [1-1] complaint
               (signed by Magistrate Judge Alonzo P Wilson) NOE by: sem
               (sem) [Entry date 11/02/00]

11/1/00   17   SECOND AMENDED COMPLAINT by Baskin Robbins Inc, Baskin
               Robbins U S A, amending [1-1] complaint (sem)
               [Entry date 11/02/00]

12/6/00   18   MOTION w/ brief by Tommy Joyce, Marlene Joyce, Tommys R V
               Rentals to transfer case to the USDC/EDTX WITH EXHIBITS (sem)
               [Entry date 12/07/00]

12/6/00   20   ANSWER to Complaint w/ jury demand and CNTERCLM by Tommy
               Joyce, Marlene Joyce, Tommys R V Rentals against Baskin
               Robbins Inc, Baskin Robbins U S A (sem)
               [Entry date 12/08/00]

12/7/00   19   NOTICE OF SETTING: Motion day set on 1/9/01 for [18-1]
               motion to transfer case to the USDC/EDTX before Magistrate
               Judge Alonzo P Wilson. NOE by: sem (sem)
               [Entry date 12/07/00]

12/20/00 21    UNOPPOSED MOTION by Baskin Robbins Inc, Baskin Robbins U S
               A to extend time to reply to defendants' counterclaims and
               respond to defendants' motion to transfer with Proposed
               Order referred to Magistrate Judge Alonzo P Wilson (tr)
               [Entry date 12/20/00]

Proceedings include all events.                          DISC    TRADEM
2:00cv1522 Baskin Robbins Inc, et al v. Tommys R V Rentals, et al CLOSED

12/26/00 22    INITIAL OPPOSITION by Baskin Robbins Inc and Baskin Robbins
               U S A to [18-1] motion to transfer case to the USDC/EDTX
               (donn) [Entry date 12/28/00]

12/27/00 23    ORDER granting [21-1] motion to extend time to reply to
               defendants' counterclaims and respond to defendants' motion
               to transfer. ORDERED that Plaintiffs shall have through and
               including 01/12/01 to file a reply to Defendants'
               counterclaims and a response to Defendants' motion to
               transfer. (signed by Magistrate Judge Alonzo P Wilson) NOE
               by: pam/dmn (donn) [Entry date 12/28/00]

1/12/01  24    RESPONSE by Baskin Robbins Inc, Baskin Robbins U S A in
               opposition to [18-1] motion to transfer case to the
               USDC/EDTX WITH EXHIBITS (sd) [Entry date 01/16/01]

1/12/01  25    ANSWER by Baskin Robbins Inc, Baskin Robbins U S A to
               [20-2] counter claim (sd) [Entry date 01/16/01]

1/18/01  26    NOTICE by Tommy Joyce, Marlene Joyce, Tommys R V Rentals of
               Supplemental Authority in Support of Motion to Transfer (sd)
               [Entry date 01/19/01]

1/19/01  27    REPLY by Tommy Joyce, Marlene Joyce, Tommys R V Rentals to
               response to [18-1] motion to transfer case to the USDC/EDTX
               (sd) [Entry date 01/23/01]

1/29/01  28    ANSWER by Tommy Joyce, Marlene Joyce, Tommys R V Rentals to
               first amended complaint; jury demand (sd)
               [Entry date 01/31/01]

1/29/01  29    ANSWER by Tommy Joyce, Marlene Joyce, Tommys R V Rentals to
               second amended complaint; jury demand (sd)
               [Entry date 01/31/01]

2/9/01   30    NOTICE by Tommy Joyce, Marlene Joyce, Tommys R V Rentals of
               Supplemental Authority in Support of Motion to Transfer (sd)
               [Entry date 02/13/01]

2/16/01  31    NOTICE by Baskin Robbins Inc, Baskin Robbins U S A of
               Withdrawal of Opposition to Motion to Transfer with
               proposed order referred to Judge James T Trimble Jr (sd)
               [Entry date 02/21/01]

2/23/01  32    ORDER granting [18-1] motion to transfer case to the
               USDC/EDTX.  (signed by Judge James T Trimble Jr)  NOE by:
               sjd (sd) [Entry date 02/28/01]

2/23/01  --    Case closed (sd) [Entry date 02/28/01]

2/28/01  --    CASE TRANSFERRED to Eastern District of Texas.  Original
               pleadings, certified docket sheet, and certified order of
               transfer forwarded to receiving court. (sd)
               [Entry date 02/28/01]

Docket as of February 28, 2001 11:28 am                  Page 7